WILLIAM WADDINGHAM, Respondent, v. PAULINE WADDINGHAM, Appellant.

Kansas City Court of Appeals, November 7, 1887.

1. PRACTICE—RATIFICATION OF JUDGMENT BY ENFORCING IT—PARTICIPATION IN ERROR PRECLUDES COMPLAINT OF IT—CASE ADJUDGED. Where a party, in the progress of the trial, has invited the court to commit the error, he cannot afterwards assign such error as ground of reversal. So a party, after he has ratified the judgment by enforcing it should not be heard to demand its reversal. A party cannot accept the benefits of an adjudication, and yet allege it to be erroneous. The judgment is an entirety. If reversed in part it must be in whole ; it cannot be quartered nor in less degree subdivided. It must be accepted, as a whole, or wholly rejected.

2.  JURISDICTION—APPELLATE COURTS—POWERS LODGED IN FOR THEIR
PROTECTION, ETC.—While the jurisdiction of this court is only
appellate, and it is ordinarily limited to such questions as are
presented in the record of the proceedings of the lower courts, and
the trial of questions of fact should ordinarily be remitted to the
*nisi* courts, yet, there must be incidental powers lodged in, and
exercised by, the appellate courts for their proper protection, and
the due and speedy administration of justice.  And this court has
the right and power to entertain a motion affecting the right of
the appellant to continue his appeal where he has, by an act
*in pais*, since perfecting his appeal, estopped himself from prose-
cuting it.

APPEAL from Audrain Circuit Court, HON. ELIJAH
ROBINSON, Judge.

*Motion to dismiss appeal sustained, and the appeal
dismissed.*

W. W. FRY, for the appellant, and against the
motion to dismiss the appeal.

I.   The allowance of alimony in gross is the only
proper order under the peculiar circumstances of this
case.   Rev. Stat., sect. 2180 ; *Golding v. Golding,* 74
Mo. 123 ; *Crews v. Mooney,* 74 Mo. 26.

II.   Alimony in gross will end the controversy ; it
will end the litigation.   Such a decree for alimony in
gross will not be subject to alteration in the future and
defendant will be freed from efforts in that direction by
plaintiff if alimony is so granted.   *Chester v. Chester,*
17 Mo. 661, 662 ; *Plaster v. Plaster,* 47 Ill. 294 ; *Crews
v. Mooney,* 74 Mo. 26.   The courts have held that
alimony in gross was better when the husband would
likely vexatiously delay or withhold payment.   *McClung
v. McClung,* 40 Mich. 493 ; *Prescott v. Prescott,* 59 Me.
146 ; *Blankenship v. Blankenship,* 19 Kan. 159.   As the
object of the law in such cases is to protect the injured
wife from the guilty husband, and that she might be
maintained during life out of his estate in peace and
comfort equal to her circumstances in life, that is,
equally as well as the husband would be able to main-

tain her were she still his wife, then in order that this end may be attained in this action, let the amount that may be allowed defendant be paid absolutely in gross, that she may be eternally free from him.

III.   (1) Judgments can be released only when so intended and under seal. *McAllister v. Dennin*, 27 Mo. 41 ; *Hill v. Alexander*, 77 Mo. 303.   (2) Yet, outside of the facts in this case, we insist this court cannot hear evidence and try the question of fact submitted by respondent's motion.   The transcript presents an unsatisfied final judgment appealed from, and this court cannot enquire into the question of fact put in issue by respondent's motion, as to whether the judgment appealed from has, since the appeal, been satisfied.   The appellate court has no original jurisdiction.   Rev. Stat., sect. 3776 ; Constitution, sect. 2, art. 6.   "The appeal from the decree in the divorce suit invested the St. Louis Court of Appeals with jurisdiction to hear and determine the cause solely upon the record as made up in the circuit court, and to affirm, or modify, or reverse the judgment and remand the cause, or to render such judgment as in its opinion the circuit court ought to have rendered," is the language used by the court in the *State ex rel. v. St. Louis Court of Appeals* (88 Mo. 138), where the court of appeals had allowed alimony *pendente lite.   Vail v. Dinning*, 44 Mo. 210.   (3) After appeal was perfected the lower court lost all control over the case and could issue no execution to enforce the judgment appealed from.   *Burgess v. O'Donoghue*, 90 Mo. 299 ; *Ladd et al. v. Couzins*, 35 Mo. 513 ; *Jones v. Christian*, 24 Mo. App. 542 ; *Sturdevant v. Watkins et al.*, 47 Mo. 177 ; *Oberkoetter v. Luebbering*, 4 Mo. App. 481.   Respondent could not have been compelled to pay money on the judgment appealed from.   We have no doubt but what he wanted to have the judgment satisfied in any way to avoid meeting the issues in the appellate court.   After the appeal was perfected appellant had no judgment in the circuit court to satisfy.

The appellate court had complete charge of the case. This being true the judgment could not have been collected by execution pending the appeal, and could have been satisfied only in writing under seal. To satisfy it after appeal there should be a stipulation in writing to that effect under seal. *Railroad v. Atkinson*, 17 Mo. App. 496; Freeman on Judgments, 328; Estes Pleadings, sect. 4995. "Appeal, without bond, by the defendant, a woman, against whom a decree of divorce has been rendered, suspends the judgment." *Miller v. Miller*, 12 Mo. App. 593. (4) From every final judgment the defeated party is entitled to an appeal. If the judgment is satisfied before the appeal is taken, then there is no judgment to appeal from, and the record before the appellate court showing that fact, the court will find for the respondent. This was the holding of the court in *Cassell et al. v. Fagin et al.* (11 Mo. 208); *Robards v. Lamb* (76 Mo. 192), cited and relied upon herein by respondent. In those cases judgment was satisfied and afterwards the defeated party appealed, and the fact that the judgment was satisfied before appeal was taken, appeared of record in the appellate court. Therefore, those cases do not support respondent's motion.

W. H. KENNAN, for the respondent.

I. Alimony in gross ought not to be allowed. There is not a particle of evidence in this case, not one single circumstance of any kind, to indicate that the monthly installments will not be promptly paid. And all intimations to that effect are purely gratuitous. Defendant is entitled to be maintained by plaintiff, but after that is done, the whole of his estate should be left, so that at his death it will descend to his relations (the source from which it came) instead of hers.

II. The allowance of alimony to be paid in monthly installments, conforms to the requirements of the statute, which permits alimony to be decreed "in gross, or from

year to year." If any complaint could be made against such a decree, it would have to come from plaintiff, and it has been held that even he would have no just grounds of complaint. *Schmit v. Schmit*, 26 Mo. 236.

Martin, Laughlin & Kern, also for the respondent. On the motion to dismiss appeal.

I. We earnestly insist that this court cannot justly hear or consider this question of error in the judgment appealed from, for the reason that the appellant has enforced the judgment by process of the court against the respondent, thereby releasing the error complained of. The affidavits and papers accompanying the motion to dismiss establish the fact of such enforcement, beyond all question, and leave nothing for the appellant to say on the point, except to confess the fact thus presented to the court.

II. As to the law forbidding the plaintiff in a judgment from prosecuting an appeal after having enforced it against the defendant, we submit that it is well settled in this state. The point was first considered in the case of *Cassel v. Fagin* (11 Mo. 207, 135), Judge Scott rendering the decision of the court. That able jurist notes the distinction between the defendant and the plaintiff in a judgment appealed from. The defendant may be compelled to pay a judgment by process, having obtained no stay of execution. He is at liberty to prosecute an appeal for the purpose of reversing it as erroneous. If he succeeds, he has an action for money paid to plaintiff for his own use. The appellate courts have, not unfrequently, ordered and enforced restitution. But, in the language of Judge Scott, "very different is the case of a plaintiff in error, who wishes to reverse his own judgment, as he may do. He is under no necessity of suing out execution to enforce his judgment and receive satisfaction of it, and if, by his own voluntary act, he extinguishes his judgment, what is there on which a writ of error can operate?"

III. The principle upon which rests the doctrine announced in *Cassel v. Fagin* is, that a party voluntarily enforcing or receiving the fruits of a judgment, thereby ratifies and affirms its validity. He will not be allowed to impeach it as erroneous. This doctrine has been affirmed in the recent case of *Robards v. Lamb* (76 Mo. 192), wherein the court, Norton, J., rendering the opinion, after approving *Cassel v. Fagin*, announces it as settled law in this state that a party cannot accept the fruits of a judgment and also appeal from it. Errors of a judgment may be released by express contract or instrument of release. They may also be released by any act of the plaintiff which cannot be reconciled with his conduct of impeaching the judgment as erroneous or unjust. In the language of the Supreme Court of Illinois : "We think it a correct rule of law, and well settled by the authorities, that a party cannot accept the benefits of an adjudication, and yet allege it to be erroneous." *Mississippi Railroad v. Byington*, 14 Iowa, 572. In *Ruckman v. Alwood* (44 Ill. 183), Chief Justice Walker says : "It is the settled doctrine of this court that, where a party recovering a judgment or decree, accepts the benefits thereof voluntarily, and knowing the facts, he is estopped to afterwards reverse the judgment or decree in error ; that the acceptance operates as, and may be pleaded as, a release of errors." The suing out of an injunction to restrain the enforcement of a judgment, is, in its very nature, a release of errors. This rule has been incorporated into our statute on injunctions. Rev. Stat., 1879, sect. 2709. In Indiana, the principle contended for has been expressed in statute form. *Clark v. Wright*, 67 Ind. 224. The law in other states is in accord with the cases cited from our own reports. *Bennett v. Vansyckle*, 18 N. Y. 481 ; *Ind. Dist. of Altoma v. Dist. Del.*, 44 Iowa, 201 ; *Hitchcock v. Railroad*, 25 Conn. 516 ; *Town v. Town of Blackberry*, 29 Ill. 137 ; *Kile v. Town of Yellowhead*, 80 Ill. 208 ; *Hartshorn v. Patroff*, 89 Ill. 509 ; *Murphy v. Spaulding*, 46

N. Y. 556; *Burns v. Railroad,* 8 Wis. 450; *Kurber v. Nillis,* 22 Wis. 215; *Clark v. Wright,* 67 Ind. 224; *Stern v. Vest,* 108 Ind. 232; *State v. Judge,* 4 Rob. 85; *Earle v. Reid,* 25 Ala. 463.

IV. (1) The decree, so far as it goes, was favorable to appellant. She cannot affirm and impeach the same judgment. In the language of Comstock, J.: "It results that the defendant could not both proceed to enforce such portions as were in his favor, and appeal from those which were against him. The right to proceed on the judgment and enjoy its fruits, and the right of appeal were not concurrent; on the contrary, were totally inconsistent. An election to take one of these courses was, therefore, a renunciation of the other." *Bennett v. Vansyckle,* 18 N. Y. 481. (2) Neither is there any force in the reflection that the decree in a divorce case differs somewhat from many decrees in ordinary cases, in that it is subject to alteration from time to time, on the application of either party, as may be proper. Rev. Stat., sect. 2179. The object of this provision in our statutes was to guard against the injustice which might attend the enforcement of an order of alimony, when a change in the circumstances of the parties has taken place since the rendition. Such is not the case presented in this appeal. There has been no change in the circumstances of the parties. Neither has either party made an application for alteration of the order. The motion and appeal do not constitute such application. They are constituent parts of the original proceeding, not asking for an alteration to suit the changed circumstances of the party, but asking this court to review and set aside the original order, because of supposed errors of the court in rendering it. Surely the appellant will not be allowed the advantages of a new application for alteration of the decree, in the usual proceedings of an appeal, in which she asks for a review and reversal of the original order. This would confound the distinction between *nisi prius* and appellate jurisdiction, which this court

cannot afford to overlook. (3) Neither is there any force in the pretence that the appellant should be allowed to enforce her judgment during appeal; otherwise she would be without the means of support during that time. There are two very cogent answers to this pretence: (*a*) This embarrassment, or necessity, may happen in any case. Any plaintiff holding a judgment may need the money adjudged to him by it, for his support during an appeal; but will this necessity justify him in enforcing it, and in claiming exemption, on appeal, from the natural and legal consequences of his thus enforcing it? The appellant has a judgment for her support. Will her supposed necessity override the law, establish a bad precedent, and relieve her from the logical and legal consequences of a voluntary act in enforcing a judgment in her favor? We think her assumption is not capable of serious consideration. (*b*) No legal or moral compulsion rested upon Mrs. Waddingham to enforce her decree during appeal, in order to obtain the means of support. If the separate property left her by the decree did not furnish enough for her maintenance, she was at liberty to apply to the trial court rendering the decree, for an order of temporary alimony, during appeal of her case. *Miller v. Miller*, 12 Mo. App. 593; *State ex rel. v. St. Louis Court of Appeals*, 88 Mo. 135. This appeal is a speculation for money. The appellant has her divorce. She has a decree for reasonable alimony. She has collected it, and wants more. If the decree is affirmed she loses nothing. If it should be reversed, and a less sum rendered, there is no law to compel her to return what she has received. Her appeal ought to be dismissed.

PHILIPS, P. J.—This proceeding grows out of the suit for divorce between the parties, reported in 21 Mo. App. 309. After the cause was remanded, and at the June term of the circuit court, 1886, on motion of Mrs. Waddingham's attorney, the court allowed her alimony

*pendente lite* in the sum of $250, and continued the matter to the next term. It is conceded that this allowance was paid by the plaintiff *instanter*.

At the next October term, and on the thirtieth day of November, the judge's minutes show the following entry : "Ordered that plaintiff pay $300 and $120, total, $420, to-day, and $60 on the first of each month." This was made on the final hearing as to the permanent alimony for the defendant.

From these minutes the final decree was written up in form, showing that the court regarded the allowance as the final disposition of the pending controversy for alimony, which was all that remained for determination under the opinion of this court in remanding the cause. The only difference between the language of the minutes and the formal judgment, in effect, was the added words in the judgment, "each and every month thereafter during the natural life of both plaintiff and defendant." From this final decree the defendant appealed to this court, the *gravamen* of her complaint being the failure of the trial court to award her such sum as, in her judgment, the evidence and the exigencies of her condition in life demanded.

This appeal, standing for hearing at this term of this court, the respondent comes and files motion, asking to dismiss the appeal for the reason that, since taking the same, the appellant has enforced by executions, and appropriated, the sums awarded her by the judgment, thereby ratifying the action of the circuit court and affirming the validity of the judgment. While the parties are not wholly agreed as to all the facts in detail, the issue of fact is sharply defined. The appellant's counsel contends that the sums thus collected were not on account of the judgment appealed from, but, in fact, were based on a separate allowance, made by the circuit court at the same time for temporary alimony, pending the past litigation in the circuit court, and that the sixty dollars per month was to cover expenses pending

the appeal in this court. The misfortune to the contention of appellant is that there is no minute or record to support it, save that above alluded to. The record wholly fails to support the position of appellant. There is no minute of the court to support it and no judgment based thereon. The only minutes of the judge, and the only record made up thereon, are those to support the judgment appealed from.

I. The antecedent history of the allowances made by the court to Mrs. Waddingham during this protracted controversy with the plaintiff is wholly inconsistent with the idea that the court, on the thirtieth of November, 1886, at the final hearing, intended to make to her the separate, additional allowance, distinct from the permanent alimony, indicated by the minutes of that date. The record shows that prior to the June term, 1886, the court had allowed her alimony *pendente lite* in various sums, aggregating about eighteen hundred dollars, and, with the addition of the allowance of June, 1886, would amount to two thousand and fifty dollars. These large allowances had for their justification the extraordinary expenses, consequent upon obtaining witnesses and taking depositions in distant portions of the United States, on the issues involved in the divorce suit. The sum allowed in June, 1886, evidently was supposed by the court to be sufficient to cover the necessities of her case during the vacation, so when the case was finally heard on the question of a permanent alimony, the court made an additional allowance of three hundred dollars, as temporary alimony, and as it had been two months since the court began, the first of October, it allowed at the rate of sixty dollars per month to cover that period, aggregating four hundred and twenty dollars, up to the final decree, and sixty dollars each month thereafter, to cover the permanent alimony during the lives of the parties.

There are other potent facts and circumstances be-

fore us, on this hearing, which make it almost incredible; that the appellant and her attorney should have entertained the belief that the money they were collecting under the executions issued by them every month, up to September, 1887, was other than that founded on the judgment appealed from. It would subserve no useful purpose to state them. It is sufficient to say the whole record and proofs before us are of such persuasive force as to leave not a shadow of doubt in our minds that the judgment enforced by the appellant is the same involved in the appeal. And if the appellant did not know it, it was because she blindly shut her eyes to a fact so obvious that the law will not tolerate her ignorance. It is a significant fact, too, that while this woman makes a perfunctory affidavit as to her ignorance, her intelligent lawyer is careful not to do so.

II. The only remaining questions, therefore, for determination are, first, as to the legal effect on the pending appeal of such act of the appellant, and, second, as to the right of this court to entertain this motion. That a party should be heard in this court to complain of the imputed errors committed and wrongs done him by the trial court, which led to the judgment appealed from, when he has reaped and enjoyed the fruit of that judgment, strikes the plainest dictates of common sense and common right as intolerable.

It has been repeatedly held that where a party in the progress of the trial has invited the court to commit the error, he cannot afterwards assign such error as ground for reversal. *Davis v. Brown*, 67 Mo. 313; *Noble v. Blount*, 77 Mo. 241; *State v. Beaty*, 25 Mo. App. 214. Upon the same parity of reasoning, and with more of equity, it occurs to me, should it be held that a party, after he has ratified the judgment by enforcing it, and accepting its benefits, should not be heard to demand its reversal. Equality is justice. The respondent was content with the judgment. Not having appealed, he

had no alternative left him when the execution came but to pay it. How unequal, therefore, would be the situation of these litigants should this appeal be entertained, and the judgment of the lower court be reversed, and the cause remanded for a trial *de novo*. The respondent would have no recourse to recover back what he had paid upon a judgment in which he had acquiesced. Should the appellant, on a further trial, be awarded more than on the first, she possibly might be required to give credit therefor on the last judgment. But suppose she should recover less, in considerable degree, how could the respondent be made whole? He would be remediless, especially against an insolvent adversary.

So in *Cassel v. Fagin* (11 Mo. 207, 135), the Supreme Court recognized the law to be, that the appellant could not be heard to prosecute his appeal after he had enforced the judgment complained of. Judge Scott, who delivered the opinion, after saying the unsuccessful party may, or may not, prosecute an appeal from the judgment, and if he appeals without giving bond, and the judgment be enforced against him in the meantime, if he reverses the judgment, he may recover back the sum so paid, yet, says the learned judge: "Very different is the case of a plaintiff in error who wishes to reverse his own judgment, as he may do. He is under no necessity of suing out execution to enforce his judgment and receive satisfaction of it; and if, by his own voluntary act, he extinguishes his judgment, what is there on which a writ of error can operate? * * * Suppose a plaintiff reverse his judgment and procure a new trial, will he not hold on to what he has already received? And if on the second trial he should recover nothing, the defendant would not be entitled to restitution, for he stands in the place of one who has paid money by process of law under which he acquiesces. Thus, the plaintiff will have it in his power to split his cause of action to recover one part of it at one time, and afterwards sue for the balance." By this latter obser-

vation he recognized the proposition, that a writ of error
is in the nature of a new action.

An examination of repeated adjudications satisfies
us that the rule of law and practice is well established,
"that a party cannot accept the benefits of an adjudica-
tion, and yet allege it to be erroneous." As said in *Ben-
nett v. Vansyckle* (18 N. Y. 481) : " The right to proceed
on the judgment and enjoy its fruits, and the right of
appeal were not concurrent ; on the contrary were totally
inconsistent. An election to take one of these courses
was, therefore, a renunciation of the other." See also
the following adjudications : *Mississippi Railroad v.
Byington*, 14 Ia. 572 ; *Ruckman v. Alwood*, 44 Ill. 183 ;
*Kile v. Town of Yellowhead*, 80 Ill. 208 ; *Murphy v.
Spaulding*, 46 N. Y. 556 ; *State v. Judge*, 4 Robinson, 85 ;
*Earle v. Reid*, 25 Ala. 463. Nor can it make any differ-
ence in this case that this judgment was for a given sum.
from month to month, and the defendant had only col-
lected the past months, and that the sums allowed for
the future were liable to be changed by the further order
of the court. The judgment is an entirety. If reversed
in part it must be in whole. It cannot be quartered,
nor in less degree subdivided. It must be accepted as a
whole or wholly rejected. *Bennett v. Vansyckle*, 18 N.
Y. 483.

III. The only remaining question is, has this court
the right to entertain this motion, hear the proofs, and dis-
miss the appeal, if the facts be established ? We are not
unmindful of the general rule that the jurisdiction of
this court is only appellate, and that, ordinarily, we are
limited to such questions as are presented in the record
of the proceedings of the lower court ; and also, that the
trial of questions of fact should, ordinarily, be remitted
to the *nisi* courts. And while we believe that the higher
the character of the court the greater should be its cau-
tion in the assumption of doubtful jurisdiction, yet, it
must follow, from the very necessities of the situation,
that there must be incidental powers lodged in, and exer-

cised by, the appellate courts for their proper protection, and the due and speedy administration of justice. It is true that in the two cases cited from our Supreme Court, wherein the appeal was dismissed, the fact of acceptance of the fruit of the judgment appealed from appeared in the record. But I am unable to perceive, on principle, any valid objection to the right and power of this court to entertain a motion affecting the right of the appellant to continue his appeal where he has, by an act *in pais*, since perfecting his appeal, estopped himself from prosecuting it. The valuable time of this court ought not, to the delay of meritorious, waiting litigants, and the public detriment, be uselessly consumed in determining questions, apparently between contending litigants, who have in fact settled the matter in controversy outside of court. I have known parties, after they have actually adjusted the judgment appealed from, to suffer the cause to remain in court, and the court to labor over the questions of fact and law involved in the record, merely for the sake of an abstraction. This is a grievous injustice to the court, and the public. And I do not hesitate to say that the court would protect itself against such imposition, were the fact brought to its attention, by summarily striking the cause from the docket. It may be conceded that the better rule of practice would be, where the facts in controversy, raised by the motion, are doubtful, or complicated, for the appellate court to make an order of reference to the *nisi* court. This was the course pursued in *Ruckman v. Alwood* (*supra*). On the other hand, where, as in this case, little ground of controversy as to the real facts exists, and the evidence is mainly of a record character, this court may, and should, entertain and determine the motion without further delay. *Steel v. Knox*, 18 Ala. 817; *Earl v. Reid*, 25 Ala. 463; *Murphey v. Spaulding*, 46 N. Y. 556; *Bennett v. Vansyckle, supra.*

The other judges concurring, the motion is sustained and the appeal dismissed.