JULIA T. MUNROE, RESPONDENT, *v.* JACOB CROUSE AND GILES EVERSON, APPELLANTS.

*Sale of land subject to a right of dower and also to a mortgage, which is assumed by the purchaser — payment of the mortgage by the purchaser, compelled by the owner of the dower interest.*

Certain real estate which had belonged to an insolvent debtor was conveyed by his assignee, subject to a mortgage thereon which the purchasers agreed with the assignee that they would pay, and subject also to the dower interest in the premises of the widow of the assignor, the insolvent debtor.

The purchasers at such sale entered into possession of the premises, and received the rents thereof, but refused to pay any interest on the mortgage with the intention of inducing a foreclosure thereof, which took place in consequence of such non-payment of the interest, and the premises were purchased at the foreclosure sale by the parties who had purchased the premises from the assignee for just the amount due upon the mortgage for principal and interest and expenses:

*Held,* that as the purchasers from the assignee had agreed to pay the mortgage, and such payment consequently constituted part of the purchase-price of the premises, that they were trustees of that portion of the unpaid purchase-price to be used by them for the purpose of paying off the mortgage, and that they owed the duty, not only to the assignee, but also to those who had interests in the lands subsequent, to such mortgage, to so apply such funds in their hands, for the reason that the land stood only as surety for the debt, for the payment of which the purchasers held this fund in trust, and for which they were primarily liable.

That the widow, having a right of dower in the premises, which would be defeated if the mortgage was not paid, was in a position to require the purchasers from the assignee to relieve, by the payment thereof, the land from the lien of the mortgage and the plaintiff's right of dower therein from the contingency of extinguishment by a foreclosure and sale under the mortgage.

APPEAL by the defendants, Jacob Crouse and Giles Everson, from a judgment, entered, upon a decision at Special Term, in the office of the clerk of the county of Onondaga on the 25th day of May, 1890.

The action was brought for the recovery of a dower interest in certain premises which had been owned by one Allen Munroe, of whom Julia T. Munroe was the widow.

The judgment appealed from adjudged that the plaintiff was entitled to dower, to be admeasured to her out of certain premises owned by the defendants, Crouse and Everson, and to damages against them for withholding such dower, and appointed a referee to admeasure her dower and ascertain the amount of such damages.

*Waters & McLennan,* for the appellants.

*M. E. & G. W. Driscoll* and *Hon. G. F. Comstock,* for the respondent.

MARTIN, J.:

The plaintiff and Allen Munroe were married June 11, 1847, and lived together as husband and wife until October 6, 1884, when Allen Munroe died intestate, leaving the plaintiff, his widow, surviving.

On the 15th of December, 1845, John Townsend and Augustus James were the owners in fee and in possession of the property known as the Syracuse House property, situated in the city of Syracuse, N. Y. On that day they executed and delivered to David S. Kennedy a mortgage thereon, in which their wives joined, to secure the payment of $40,000, according to the condition of a bond executed by them at the same time.

Before November 9, 1871, the plaintiff's husband and Charles B. Lansing and John Townsend had become possessed of and were the owners in fee, as tenants in common, of such property, subject to the mortgage thereon, in the following proportions: Allen Munroe, three-eighths; Charles B. Lansing, three-eighths, and John Townsend, two-eighths. On that day they paid in that proportion, to apply on said bond and mortgage, $15,000, leaving unpaid thereon $25,000. After such payment, and on the same day, at the request of Munroe, Lansing and Townsend, the owner of said bond and mortgage assigned it to the Onondaga County Savings Bank. On

the 11th of the same month Munroe, Lansing and Townsend executed and delivered to the bank an instrument under their hands and seals, whereby they acknowledged that there was due upon such bond and mortgage the sum of $25,000, which they promised to pay within one year from the date of the assignment, with interest, and charged the premises with the payment thereof.

The property was thus held, the plaintiff's husband being the owner of three-eighths thereof, and liable to pay three-eighths of the mortgage thereon, until the 21st day of February, 1876, when Allen Munroe and John W. Barker, who were copartners, made a general assignment, under the State laws, for the benefit of their creditors, individually and as partners, to James J. Belden, who accepted the trust and qualified as such assignee.

On May 2, 1876, Allen Munroe and John W. Barker were duly adjudicated bankrupts on the petition of their creditors, filed April 26, 1876, and James J. Belden was appointed assignee in bankruptcy of said bankrupts, duly accepted the trust and entered upon his duties as such.

Daniel F. Gott, as register in bankruptcy, on June 16, 1876, conveyed to Belden, as such assignee, all the estate, real and personal, of said bankrupts, including the interest of Allen Munroe in the property in question.

On August 5, 1876, Belden, as such assignee, under the order of the court, sold at public sale to the defendants, Crouse and Everson, the three-eighths interest which Munroe had had in the Syracuse House property. This sale was made subject to the payment by the purchasers of three-eighths of the $25,000 mortgage held by the Onondaga County Savings Bank, which the purchasers assumed to pay as a part of the consideration or purchase-price of the premises. It was also made subject to the inchoate right of dower of the plaintiff therein.

On or before September 12, 1876, Crouse and Everson paid to the assignee the sum of $72,250, being the amount of the purchase-price less three-eighths of the amount unpaid on the mortgage, each paying one-half. The assignee thereupon executed and delivered to each of them a deed dated August 22, 1876, expressing a consideration of $36,125 as paid, and each deed conveyed to the grantee named three-sixteenths of the Syracuse House property, subject,

however, in each case to the payment of $4,687.50 upon the bond and mortgage held by the bank, that being three-sixteenths of the sum remaining unpaid thereon, which sum Crouse and Everson each assumed and agreed to pay as a part of the purchase-price of the premises conveyed to him, in addition to the consideration of $36,125 mentioned therein.

. The defendants, Crouse and Everson, immediately took possession of the property thus transferred, and they have received the rents and profits of the same and continued in possession thereof until the present time, except as such possession was subsequently modified by a friendly partition made between them and the other owners of the property. The interest on the bond and mortgage held by the bank was regularly paid by the defendants and the other owners of the property in proportion to their interest therein until January 1, 1878. After that time, the defendants Crouse and Everson refused to pay their portion of the interest thereon.

. In March, 1880, the defendants, Everson and Crouse, and the other owners of the property, agreed upon a division of it into three parts, which by mutual releases and conveyances should be vested and held in severalty, one part by each of the other owners and the third by the defendants, Crouse and Everson, as tenants in common, they paying to one of the other owners $3,750 for equality of partition. An agreement in writing was executed by the parties March 18, 1880, providing for such partition and for the execution of the conveyances necessary for that purpose, and by which it was further agreed that the principal of $25,000 remaining unpaid on said bond and mortgage should be paid, two-eighths by one of such joint owners, three-eighths by the other, and three-eighths by the defendants Crouse and Everson, and that each should be charged with and pay their proportion of interest from the time to which they had paid such interest. It was also agreed that all the premises described in the mortgage should be released from the lien thereof, except the part to be conveyed to Crouse and Everson, as to which it was agreed that, upon their paying their portion, the bond and mortgage should be assigned to such person as they might designate, subject to the condition that no personal claims should be made against the obligors in said bond or their representatives. In pursuance of this agreement conveyances were made on the 28th of

April, 1880, according to the provisions thereof, and the defendants thereupon acquired title to the portion so conveyed to them, discharged of any interest of the other joint owners therein. They thereupon took possession of the portion conveyed to them and have since been in possession as sole tenants in common thereof. The defendants Crouse and Everson refused to pay interest on the bond and mortgage which fell due on or after January 1, 1878, for the purpose of compelling a foreclosure of the mortgage, intending thereby especially to cut off the plaintiff's claim of dower and deprive her of any rights or interest she might have in said premises. They made no payment thereon as contemplated by the agreement of March 18, 1880, but instead, after the delivery of the deeds, procured a foreclosure of such mortgage and a sale of the premises thereunder.

The action of foreclosure was commenced June 19, 1880, against all the parties interested in the premises, including Allen Munroe and the plaintiff in this action. Judgment was entered in that action adjudging the sum of $27,952.56 to be due on said bond and mortgage, directing a sale of the premises, and adjudging the defendants and all persons claiming under them to be forever barred and foreclosed of all right, title, interest and equity of redemption in the premises sold or any part thereof. On January 19, 1881, the premises were sold, under the judgment of foreclosure. At the request of the defendants Crouse and Everson the portion of the premises, which had been conveyed to them and was in their possession, was first offered for sale and was struck off to them for $11,609.78, which was the exact amount of the mortgage debt, interest and costs, which they had agreed and were bound to pay. The referee making such sale executed and delivered to the defendants a deed of the premises purchased by them January 19, 1881. The bids on which the several parcels were struck off were made under an agreement between the defendants and the other owners of the premises that they should be sufficient in the aggregate to extinguish the mortgage, and they were sufficient for that purpose.

Before the commencement of this action, and after the death of Allen Munroe, the plaintiff's rights in the premises were duly demanded of the defendants Crouse and Everson, who denied that she had any right of dower in the lands, or in any part thereof,

on the ground that they had purchased the property at foreclosure sale and obtained a title which had divested her of her dower therein. The property purchased by the defendants at the sale by the assignee in bankruptcy, when taken subject to the plaintiff's right of dower, was worth at least the sum paid and the portion of the mortgage assumed by them.

The facts were fully set out in the complaint and the plaintiff demanded judgment for dower in the premises owned by the defendants, and for such other and further relief as might be just.

The defendants' answer consisted of a denial of a portion of the complaint, and of allegations of the foreclosure of the mortgage on the premises, a sale under a judgment therein, a purchase by the defendants at such sale, and that such judgment was a bar to the plaintiff's recovery herein.

The facts stated were found by the trial court, and were abundantly established by the evidence.

The court, in substance, held that the plaintiff before her husband's assignment and bankruptcy had an inchoate right of dower in the premises subject to the mortgage; that he was personally and primarily liable for three-eighths of the sum unpaid thereon; that defendants, having purchased his interest subject to such mortgage and to plaintiff's dower right, and having agreed to pay the portion of the mortgage debt due from him as a part of the purchase-price, they became primarily liable therefor and held such portion of the purchase-price in trust for that purpose, and that it became their duty to so apply it and thus protect the plaintiff's right in the land; that the payment of the sum bid on the sale in foreclosure was a payment of their own debt, and they acquired no title thereby which would bar the plaintiff's right of dower; that plaintiff's right having become absolute by the death of her husband, she was entitled to judgment for dower in the premises acquired by the defendants and to damages for withholding the same after demand.

If the facts alleged and proved were sufficient to sustain a recovery in this action, and the relief awarded was that to which the plaintiff was entitled, no time need be spent in considering the question of the proper name to be given to this action, nor in discussing the peculiar characteristics of different actions or the refined distinctions which may have formerly existed between one action

and another. If, upon the proof in this case, the plaintiff was entitled to the judgment awarded, there is no question as to the sufficiency of the pleadings.

The only real question, that need be here considered, is whether the title acquired by the defendants by their purchase at the sale on the foreclosure of the mortgage was a bar to the plaintiff's action for dower. That the mortgage foreclosed was a lien upon the premises prior and superior to the plaintiff's right of dower is not denied. It must also be admitted that if the premises had been purchased by a person upon whom no duty rested as to the payment of such mortgage, he would have obtained a title freed from the plaintiff's dower. We think such was not this case.

Prior to his insolvency the plaintiff's husband had expressly agreed to pay three-eighths of the mortgage to the then holders of it. He was, therefore, personally liable to pay the mortgage debt. Upon the sale of the premises by the assignee in bankruptcy they were sold to the defendants, subject to the plaintiff's right of dower, and also subject to the mortgage, which the defendants assumed and agreed to pay, with a portion of the purchase-price which was retained in their hands for that purpose. They thereupon became the principal debtors and were personally liable to pay the debt secured by the mortgage under which they now claim title. They were also bound to protect the land from any liability on account thereof, as it was merely security for the debt for which they were primarily liable. (*Wilcox* v. *Campbell*, 106 N. Y., 325; *Wilbur* v. *Warren*, 104 id., 193, 199; *Schley* v. *Fryer*, 100 id., 71.)

While this liability rested upon the defendants to discharge the mortgage debt, and while they retained a portion of the purchase-price in their hands for that purpose, the proof shows, with painful certainty, that they devised a plan to deprive the plaintiff of her interest in the premises without the slightest compensation to her therefor and to secure the property to themselves, free from her interest therein. The plan may have been ingenious, but it was neither just nor equitable. Whether it shall succeed is the practical question to be determined on this appeal.

The respondent, to uphold this judgment, invokes the rule that equity imputes to a party an intention to fulfill an obligation resting upon him. "This principle is the statement of a general presump-

tion upon which a court of equity acts. It means that wherever a duty rests upon an individual, *in the absence of all evidence to the contrary*, it shall be presumed that he intended to do right rather than wrong; to act conscientiously rather than with bad faith; to perform his duty rather than to violate it." (1 Pomeroy's Eq. Juris., § 420.)

Much as we would be gratified to uphold this judgment upon the ground that the defendants intended to perform their duty rather than to violate it, still the evidence is such as to forbid the application of that principle in this case. It is only in the absence of all evidence to the contrary that that presumption arises. The evidence discloses, and the court has found, that the defendants procured this mortgage to be foreclosed and became the purchasers of the property at the sale for the especial purpose of depriving the plaintiff of her right of dower.

The evidence and findings of the court in this case are totally inconsistent with the idea that the defendants procured the mortgage to be foreclosed, and purchased the property with an intent to fulfill their obligations to pay the mortgage and relieve the property from the lien thereon. But we think the judgment may be sustained upon other grounds. The defendants were permitted to retain in their hands a portion of the purchase-price of the premises upon an agreement to apply it to the payment of the mortgage under which they now claim title. This constituted a trust. "A trust signifies a holding of property, subject to a duty of employing it or applying its proceeds according to directions given by the person from whom it was derived." (2 Abb. Law Dict., 609.)

The portion of the purchase-price retained by the defendants was held by them subject to the duty of applying it to the discharge of the mortgage on the premises, and they, in effect, agreed to apply that sum in discharging the land from the lien of the mortgage. This constituted them trustees of the fund for that purpose. They owed this duty to so apply the fund in their hands to the assignee in bankruptcy, to relieve the estate from any personal liability for the mortgage debt. They also owed the same duty to those who had interests in the land subsequent to such mortgage, as the land stood only as surety for the debt which they held this fund in trust to pay and for which they were primarily liable.

The plaintiff had a right of dower in the premises which might be defeated if this mortgage was not paid. The defendants purchased the premises subject to that right, and agreed to pay the mortgage from the fund remaining in their hands. We think the defendants owed the plaintiff the duty to apply the fund in their hands in accordance with the terms of their agreement, and to relieve the land from the lien of the mortgage thereon, and the plaintiff's right from the contingency of extinguishment by a foreclosure and sale under it. It was their duty to protect the plaintiff's interest in the premises to that extent. When they refused to pay the mortgage debt, procured the mortgage to be foreclosed for the purpose of depriving the plaintiff of her right, and purchased under the mortgage sale, their purchase was inconsistent with their duty to the plaintiff, and, we think, was invalid as to her.

In *Van Epps* v. *Van Epps* (9 Paige, 238, 241) Chancellor WAL-WORTH said: " The rule of equity which prohibits purchases by parties placed in a situation of trust or confidence with reference to the subject of purchase, is not, as the defendant supposes, confined to trustees or others who hold the legal title to the property to be sold ; nor is it confined to a particular class of persons, such as guardians, trustees or solicitors. But it is a rule which applies universally to all who come within its principle; which principle is, that no party can be permitted to purchase an interest in property and hold it for his own benefit, where he has a duty to perform in relation to such property, which is inconsistent with the character of a purchaser on his own account and for his individual use." This doctrine was cited with approval in *Fulton* v. *Whitney* (66 N. Y., 548), and it was there held that a trustee cannot purchase for his own benefit property which, although not the subject of the trust, is connected with it in this, that a sale of the property for less than its value will diminish the trust fund. In that case it was also held that the provision in a decree of foreclosure authorizing any of the parties to become purchasers was no protection to the purchasers, nor did the confirmation of the sale have that effect, as the rights and equities of the plaintiff were not before the court nor involved in the foreclosure suit.

The doctrine of the *Van Epps Case* was again cited and approved in *Bennett* v. *Austin* (81 N. Y., 308, 323), where it was held that

" where a debtor creates or appropriates a fund for the payment of a particular debt or lien, the duty of the holder of the fund is not performed by applying it to the payment of another debt; the debtor has the right to determine as to the application, and to have the application, when made, carried out. Where a duty rests upon a party in respect to the property of another, the violation or omission of which will result in a sale of the property, and where a sale is made because of such breach of duty, the person owing it is absolutely disqualified from becoming a purchaser at the sale for his own account. The usual provision in a decree of foreclosure, that any of the parties to the suit may purchase on the sale, will not permit one defendant to bid in premises belonging to another, and to hold them against the latter contrary to equity." (See, also, *Fairchild* v. *Lynch*, 99 N. Y., 359; *Conger* v. *Ring*, 11 Barb., 356.)

The appellants' counsel correctly states the question involved when he says " the question here is whether the facts are such as, in equity, to charge the defendants with a duty to plaintiff inconsistent with the character of purchasers on their own account."

We think, as we have endeavored to show, that the facts were such that, under the principle of the authorities cited, the defendants were not permitted to purchase this property upon the mortgage sale for their own use and benefit, as against the plaintiff's interest therein, and, therefore, that the judgment and purchase by the defendants was not a bar to the plaintiff's recovery in this action.

The questions involved in this controversy did not arise in the foreclosure action, and were not in any way determined therein. Nor do we think the contention of the appellants, that their agreement to pay such mortgage from the money retained by them was without consideration, can be sustained. The consideration was full and ample. It was the amount due on the mortgage, and was sufficient to uphold their agreement.

We think the judgment was right and that it should be affirmed.

HARDIN, P. J., and MERWIN, J., concurred.

Judgment affirmed, with costs.