ARCH STARKS, Administrator of Estate of ELLEN A. BURGE, Appel-
lant, v. A. W. LINCOLN.

Division One, February 16, 1927.

1. **ADMINISTRATION: Discovery of Assets: Pleadings: Testimony.** In-
terrogatories and answers in a proceeding to discover assets of the estate
of decedent constitute the pleadings and definitely settle the issues, but
the statements therein, except as they may be construed as admissions
against the interest of the party answering, cannot take the place of
testimony.

2. ——: ——: **Waiver of Incompetency of Witness.** In a proceeding
brought by the administrator to discover assets belonging to the estate of
decedent, he waives the incompetency as a witness of the person in whose
possession he thinks they are, by examining him under oath.

3. **WILL: Nuncupative: Definition.** A will is the legal expression of a
person's wishes as to the disposition of his property after his death. In
its nature it is ambulatory, and revocable during the testator's life. A
nuncupative will is one which depends merely upon oral evidence, having
been declared or dictated by the testator in his last sickness before a suf-
ficient number of witnesses, and afterwards reduced to writing.

4. **GIFTS: Inter Vivos and Causa Mortis: Definition.** A gift is a volun-
tary conveyance of land, or transfer of goods, from one person to another,
made gratuitously. They are of two kinds; Gifts simply so-called, or gifts
**inter vivos,** and gifts **causa mortis,** or those made in anticipation of death.
Delivery is essential to the validity of both, and both are irrevocable. Gifts
**inter vivos,** or gifts among the living, have no reference to the future and
go into immediate and absolute effect. Gifts **causa mortis** are conditional,
made in what the donor believes to be his last sickness, in contemplation
and expectation of death, to take effect after his death, and in case he re-
covers to become void.

5. **TRUSTS: Executed and Executory: Definition.** A trust is a holding of
property subject to the duty of employing it or applying its proceeds accord-
ing to directions given by the person from whom it was derived. An ex-
ecuted trust is one of which the scheme at the outset has been completely
declared. An executory trust is one which requires the execution of some
further instrument, or the doing of some further act, either by the creator
of the trust or the trustee, towards its complete creation or full effect.
All trusts are executory in the sense that the trustee is bound to dispose of
the estate according to the terms of his trust.

6. **GIFTS: Nuncupative Will.** Declarations of deceased relating to the
disposition of her property, if not reduced to writing and attested by wit-
nesses, as required in wills by the statute (Sec. 507, R. S. 1919), or if they
were not orally made in the presence of the requisite number of witnesses
and thereafter reduced to writing, do not constitute a nuncupative will, or
any other kind. And declarations to witnesses indicating a disposition
of property during the declarant's lifetime are not testamentary in their
nature.

7. ——: **Inter Vivos: Trust.** Not only does the delivery of notes indorsed
by the owner without recourse clothe the recipient with prima-facie evi-
dence of ownership, but declarations of the owner, made after such delivery
and before her death, that she had given them to the recipient to be used

in making improvements to a church, indicate an absolute, irrevocable gift, immediately effective, having no reference to the future and in no sense conditioned upon the fatal termination of her sickness, and in no sense a gift **causa mortis,** but the gift constituted an executed trust to the recipient as trustee for the purposes orally declared to him.

8. ———: ———: ———: **Confidential Relations.** Parol gifts of money and notes to an attorney, president of the board of trustees of a church, to be used in making improvements to the church building, cannot be held to be fraudulent and void on the ground that the relation of attorney and client existed between him and the donor, where no such relation existed and the evidence shows that the gift was made upon the donor's own motion and that the trustee derived no pecuniary benefit therefrom.

---

Corpus Juris-Cyc. References: **Appeal and Error,** 4 C. J., Section 2667, p. 738, n. 69. **Executors and Administrators,** 23 C. J., Section 412, p. 1187, n. 51 New; Section 416, p. 1187, n. 68. **Gifts,** 28 C. J., Section 1, p. 620, n. 1; Section 4, p. 621, n. 28; Section 21, p. 630, n. 66; Section 42, p. 647, n. 48; Section 82, p. 676, n. 33; Section 85, p. 680, n. 84; Section 92, p. 684, n. 61; Section 103, p. 689, n. 19; Section 120, p. 698, n. 19. **Trusts,** 39 Cyc., p. 17, n. 2; p. 28, n. 10; p. 29, n. 11, 13. **Wills,** 40 Cyc., p. 995, n. 21; p. 996, n. 27; p. 1073, n. 45; p. 1074, n. 46; p. 1133, n. 58. **Witnesses,** 40 Cyc., p. 2351, n. 79 New.

Appeal from Greene Circuit Court.—*Hon. Guy B. Kirby,* Judge.

AFFIRMED.

*G. G. Lydy* and *W. D. Tatlow* for appellant.

(1) The interrogatories and the answers thereto constitute the pleadings. Answers which are not required to be under oath, and which were not under oath in this case, are not evidence in favor of the respondent, but the admissions therein are evidence against him, the same as the admissions in any other pleading. These admissions placed the burden of proof on defendant. Tygard v. Falor, 163 Mo. 234; Carmody v. Carmody, 266 Mo. 565; Newel v. Edom, 242 S. W. 701. (2) It was error to refuse Instruction 1. The undisputed evidence shows that the deceased retained control of the property, which constitutes the subject-matter of the alleged gift, up to the time of her death. The alleged gift was not of specific property, but of the residue of her personal property after the payment of her debts. The undisputed evidence shows that the debts were paid out of the personal property. Such an attempted testamentary disposition of her property constitutes a nuncupative will in violation of Secs. 507, 529, R. S. 1919. McCords v. McCords, 77 Mo. 166; Albrecht v. Slater, 233 S. W. 10. (3) It was error to refuse Instruction 2. It has been repeatedly decided that oral testimony to sustain such a gift or trust must be clear and cogent so as fully to satisfy the chancellor of its existence beyond a reasonable doubt. Foley v. Harrison, 233 Mo. 589; Albrecht v. Slater, 233 S. W. 8; Pitts v. Weakley, 155 Mo. 109; Newel v. Edom, 242 S. W. 701. (4) The court erred in refusing Instruction 4. Donations between attorney and client, or minister and communicant, raise a presumption of fraud or undue

influence, requiring the donee to repel such presumption. Caspari v. First German Church, 12 Mo. App. 293; Ford v. Hennessey, 70 Mo. 580. (5) This evidence leaves such uncertainty as to what institutions were to share in her property, as to bring the case within the rule recognized by this and other courts, that it is void for uncertainty. Jones v. Patterson, 271 Mo. 1. (6) A delivery in terms which confer upon the donee the power to control the fund only at the death of the donor, when by the instrument itself it is presently payable, is testamentary in character, and not good as a gift. Dunn v. Ger. Am. Bank, 109 Mo. 90. (7) "Donees *causa mortis* take their title to the property subject to the contingent right of the administrator to reclaim it, and are bound to have it forthcoming when required for the payment of debts." Dunn v. Bank, 109 Mo. 101.

*H. T. Lincoln* and *Hamlin, Hamlin & Hamlin* for respondent.

(1) The relation of attorney and client did not exist between Mrs. Burge and Judge Lincoln, nor the relation of minister and communicant between Dr. Granger and Mrs. Burge. (2) The property in controversy was a gift *inter vivos* to the Dever Benton Avenue Methodist Church through Judge Lincoln as trustee. (3) The indorsement of the notes and the delivery of the same to Judge Lincoln by Mrs. Burge, the drawing of the checks and their delivery to Judge Lincoln for the money in bank, as trustee for the church aforesaid, the evidence that Mrs. Burge stated previously to the transactions that she intended doing so, and afterwards that she had done so, passed the title to Judge Lincoln, as trustee. In re Estate of Soulard, 141 Mo. 642. (4) The fact that Mrs. Burge received part of the money during her life, or even that she was to receive it would not affect the validity of the trust. Estate of Soulard, supra; Davis v. Wey, 125 Mass. 590; Telle v. Roever, 139 S. W. 256; Pitts v. Weakley, 153 Mo. 109. The indorsement and delivery of the notes created a prima-facie gift. Chandler v. Hedrick, 87 Mo. App. 672; Brown v. Worthington, 162 Mo. App. 520; Bank v. McKenna, 168 Mo. App. 254; Harris Banking Co. v. Miller, 197 Mo. App. 547; Lindhorst v. Werner, 270 S. W. 150. The possession of the notes duly assigned by the payee is evidence of ownership. Hartwell v. Parks, 240 Mo. 547. (5) When the checks were delivered by Mrs. Burge to Judge Lincoln, as trustee for the church, and by him accepted as such and presented to the bank and paid to the Judge, the transaction was a gift *inter vivos*, there having been a complete delivery. Pennell v. Ennis, 126 Mo. App. 355. (6) Judge Lincoln accepted the trust and was in the execution of the same when interrupted by the appellant, but his acceptance would be presumed where the gift would be beneficial to the beneficiary. 39 Cyc. 79; Proctor v. Board, 225

Mo. 68. (7) Trust in personal property may be established by parol. 39 Cyc. 81, 82; Carroll v. Wood, 132 Mo. App. 492; Crowley v. Crowley, 131 Mo. App. 178; In re Soulard's Estate, supra, 662. (8) The administrator and heirs cannot question the conveyance or gift as being fraudulent against creditors. McLaughlin v. McLaughlin, 16 Mo. 242; Hays v. Hays, 110 Mo. App. 20.

ATWOOD, J.—This is a proceeding commenced in the Probate Court of Greene County upon the affidavit of Arch Starks, administrator *de bonis non* of the estate of Ellen A. Burge, deceased, against A. W. Lincoln, under Sections 62-65, Revised Statutes 1919, to discover assets of the deceased.

Citation was issued, respondent appeared and was examined under oath, after which interrogatories and answers thereto were filed September 15, 1922. As these interrogatories and answers constitute the pleadings in the case and definitely settle the issues involved, although the statements therein, except as they may be construed as admissions against the interest of the party answering, cannot take the place of testimony (Carmody v. Carmody, 266 Mo. 556, l. c. 566), we state the resulting allegations briefly as follows:

A. W. Lincoln, age seventy, residence Springfield, Missouri, occupation, lawyer, was acquainted with Ellen A. Burge in her lifetime, and attended to some business for her in May, 1922. At that time she delivered to him as president of the board of trustees of the Dever Benton Avenue Methodist Episcopal Church of Springfield, Missouri, he being then and now the president of said board, as a subscription by her to said church, to be used solely for improvements on the buildings of said church, nine notes of the aggregate face value of $11,745, and two checks aggregating $631.88. These notes and checks were unaccompanied by any instrument in writing signed by the said Ellen A. Burge, except each of said notes bore the following indorsement: "Without recourse on me. Ellen A. Burge." Two notes, one for $2800 and the other for $1550, known as the McGlathan notes, were assigned as aforesaid by Ellen A. Burge of her own free will to accomplish a purpose which she had for a long time determined to do, and the said A. W. Lincoln refused to deliver them to this appellant because her wish was otherwise, to-wit: That these notes and all the notes except the George T. Davies note, in which the said Lincoln disclaims any interest, were assigned by her and delivered to him for the purpose first above stated and that said Lincoln as an individual does not claim any right of property therein, but he does claim the right to hold said notes for the board of trustees of the Dever Benton Avenue Methodist Episcopal Church for building and improvement purposes on the property of said church. These notes were delivered to him on different occasions, some being

sent to him from the hospital, and he does not recollect who were present. As president of said board of trustees he has paid debts, at the request of Mrs. Burge, aggregating $1652.63. Said board of trustees left said notes with him to be collected and the proceeds arising therefrom turned over to the treasurer of said church to be used solely for the improvement of the buildings of said church, and for said church he is now holding same. He received a deed signed by .Ellen A. Burge, recorded in Book 436 at page 126 of the records in the Recorder's Office of Greene County, with instructions to sell all of the real estate mentioned therein and out of the proceeds to pay her indebtedness in the Peoples Bank and in the Citizens Bank; second, to pay to the Foreign Missionary Society in said Dever Benton Avenue Methodist Episcopal Church $500; third, to retain out of such proceeds $800 or $1000 to be loaned out by the trustees of said Dever Benton Avenue Methodist Episcopal Church, and the interest arising therefrom to be paid to the last aforesaid church as pastoral support from herself and her deceased husband, so as to keep their names continuously on the church record as active paying members, and the balance to be used in defraying her funeral expenses, and if any amount was remaining to pay same to the trustees of said Dever Benton Avenue M. E. Church to be applied on her subscription for the improvement of the church buildings. The said Lincoln has made collections on said notes as follows: On two McGlathan notes $146.10; on the Haga note (by Underhill) $36.45; on the Miller note $36; on the Walker note $35. The said Lincoln, since the death of Mrs. Burge, has not disposed of any money or notes or other personal property received by him from her, but has paid claims as above set forth. Mrs. Burge died June 8, 1922, but at her death she owned none of the property mentioned herein. The said Lincoln claims the right to distribute said notes, moneys and personal property as president of the board of trustees of said church.

A jury was waived and the case was tried in the probate court, resulting in a finding and judgment for plaintiff. Upon appeal to the circuit court the case was tried *de novo,* resulting in a judgment for defendant.

I. Appellant complains of the circuit court's refusal to give certain declarations of law. The first declaration requested by plaintiff was at the close of all the evidence in the nature of a peremptory

**Definitions.** instruction. The court's refusal to give it is assigned as error on the theory that the alleged gift or donation to the church is a nuncupative will void under the statute, and cannot be sustained as a gift *inter vivos* or *causa mortis* or as an executed trust. Before considering the testimony we shall briefly define the terms here employed.

A will is the legal expression of a person's wishes as to the disposition of his property after his death. [Swinburne on Wills, sec. 2.] In its own nature it is ambulatory and revocable during his life, and this ambulatory quality is characteristic of wills. Black's Law Dictionary defines a nuncupative will as one "which depends merely upon oral evidence, having been declared or dictated by the testator in his last sickness before a sufficient number of witnesses, and afterwards reduced to writing." [See, also, Sec. 529, R. S. 1919.]

Blackstone (2 Comm. 440) defines a gift as "a voluntary conveyance of land, or transfer of goods, from one person to another, made gratuitously, and not upon any consideration of blood or money." Chancellor Kent (2 Comm. 711, 14 Ed.) says there are two kinds of gifts: Gifts simply so called, or gifts *inter vivos;* and, gifts *causa mortis,* or those made in apprehension of death. Delivery is essential to the validity of both, and both are irrevocable, but the former have no reference to the future and go into immediate and absolute effect; while the latter are conditional, made in what the donor believes to be his last illness, in contemplation and expectation of death, to take effect after death, and in case the donor recovers the gift becomes void.

A trust is a holding of property subject to the duty of employing it or applying its proceeds according to directions given by the person from whom it was derived. [Munroe v. Crouse, 59 Hun, 248, 12 N. Y. Supp. 815.] An executed trust is one of which the scheme has in the outset been completely declared. [Adams' Equity (8 Ed.) 40.] An executory trust is one which requires the execution of some further instrument, or the doing of some further act, on the part of the creator of the trust or of the trustee, towards its complete creation or full effect. All trusts are executory in the sense that the trustee is bound to dispose of the estate according to the terms of his trust, hence, these terms do not relate to the execution of the trust as regards the beneficiary.

At the outset we must rule against appellant's contention that this is a "nuncupative will in violation of Sections 507 and 529, Revised Statutes 1919." There is no claim that the declarations of the deceased touching the disposition of this property are in writing attested by witnesses as required in wills by Section 507, supra. Nor were they orally made in the presence of the requisite number of witnesses and thereafter reduced to writing so as to constitute a nuncupative will. In fact, the alleged declarations of the deceased, in the light of surrounding facts and circumstances, indicate a disposition of this property during her lifetime, and they are not in their nature testamentary, as we shall presently see.

Availing himself of the permissive authority of Section 63, Revised Statutes 1919, plaintiff examined defendant under oath and there-

by waived defendant's incompetency as a witness in the case. [Trautmann v. Trautmann, 300 Mo. l. c. 323.] This examination clearly showed a delivery of the property to defendant by the deceased during her lifetime and her definite declaration of purpose in so doing. Furthermore, the testimony admitted at the trial conclusively shows an actual delivery by the deceased to defendant of the property here in dispute, probably not later than two or three weeks before her death. Plaintiff testified that as the administrator of Mrs. Burge he had made diligent search for her moneys, notes, and property, but no assets came into his hands; that "everything that she had was disposed of at her death by these various deeds, conveyances and gifts, if they are valid;" and that he demanded the notes and money in controversy from defendant who refused to deliver them to him. Mrs. Burge died June 8, 1922. The two checks covering her bank balances were dated May 22, 1922, payable to the order of A. W. Lincoln who cashed them, opened up a trustee account, and deposited the proceeds to the credit of A. W. Lincoln, trustee, on May 27, 1922. Each of the notes bore the following endorsement in writing, which was admitted to be genuine: "Without recourse on me. Ellen A. Burge." Plaintiff's witness, Emma H. Bechtel, superintendent of Burge Deaconess Hospital, where Mrs. Burge was treated for some time and where she died, testified that Judge Lincoln frequently came to see Mrs. Burge at her request; that Mrs. Burge tore up her will while at the hospital, told her that she would not leave a will, but would dispose of her property before she left, and two or three weeks before her death Mrs. Burge told her that "she was turning the rest of her business over to Judge Lincoln and he would pay all outstanding bills." Mrs. S. W. Hargis, called as a witness by defendant, testified that she had known Mrs. Burge very intimately for about fifteen years, and some time after May 12th Mrs. Burge told her she "intended to give her notes and mortgages to the Dever Benton Avenue M. E. Church for an additional building or buildings to the church," and on the Sunday before her death Mrs. Burge told her she "had given all her notes and mortgages to the church." Subsequently this witness was asked: "When did she say she had turned these notes over?" Her reply was, "She didn't say she had turned them over, she said she was going to do it." Counsel for appellant insist that this latter answer destroys her previous repeated declarations that Mrs. Burge on the Sunday before her death told her that "she had given all her notes and mortgages to the church." We do not so conclude for the reason that the witness had previously testified regarding two separate and distinct conversations and there is nothing in the record to indicate that in this answer she had in mind the latter conversation instead of the first, with which the answer is entirely consistent. Furthermore, witness Nannie M. Cogley testified

that she had known Mrs. Burge for thirty-three years, and in a conversation with her on the Sunday night preceding her death Mrs. Burge said, ''Everything is all fixed up; I have turned over all I have to Judge Lincoln for the church.'' It seems to us that actual delivery of the property to defendant by the deceased while living was clearly shown.

. Not only does the delivery of notes endorsed as these were clothe the recipient with prima-facie evidence of ownership, but in this case the declarations of the deceased made after such delivery and before her death indicate an absolute, irrevocable gift, immediately effective, having no reference to the future and in no sense conditioned upon the fatal termination of the donor's illness. She did not say as the donor said in McCord's Admr. v. McCord, 77 Mo. 166, ''If I should not get well, take the money,'' etc. We concur in appellant's view that it was not a gift *causa mortis*.

However, we do not agree with appellant's position that because there was some testimony that the deceased declared that Judge Lincoln ''would pay all outstanding bills,'' and he did make certain disbursements and pay certain debts both before and after her death, she retained possession and control of the property in controversy until her death. Her declarations are not susceptible of the construction urged by appellant, namely, that she turned over to defendant all of her property after the debts were paid. It is not contended in this proceeding that defendant holds anything except certain specified endorsed notes with payments made thereon, and the proceeds of two checks made payable to his order. Defendant admitted that the George T. Davies note for $100 payable to Mrs. Burge was sent to him by some one from the hospital, and not delivered to him by Mrs. Burge, that it does not bear Mrs. Burge's endorsement, and he claims no right thereto. The evidence does disclose that on May 18, 1922, Mrs. Burge conveyed certain real estate to A. W. Lincoln, trustee, by general warranty deed in due form, with verbal directions to sell this real estate and out of the proceeds realized pay certain indebtedness and specified gifts, but with the validity of this conveyance we are not here concerned. Nor are we called upon in this proceeding to determine the legality or propriety of payments, advancements or disbursements already made by defendant, but giving full weight and credit to the deceased's declarations in relation thereto we do not regard them as even persuasive that Mrs. Burge attempted to make a testamentary disposition of this property.

It is true that defendant's answers to the interrogatories, sifted for admissions against interest, clearly rebut any presumption of individual ownership of the notes and money that might arise from delivery and possession, but independent of these admissions the

evidence clearly indicates that the property was delivered to defendant, not in his individual capacity, but as trustee for the Dever Benton Avenue Methodist Episcopal Church and that the donor gave the donee specific directions as to how it should be applied. There is some testimony relating to other benefactions made by the deceased in her lifetime, and at times she apparently thought of making gifts to other objects near and dear to her, but the clear preponderance of the evidence is that this specific property was given outright while the donor was yet alive to defendant as trustee for the improvement of the buildings of this particular church, and the gift constituted an executed trust. The evidence is so much stronger than in Foley v. Harrison, 233 Mo. 460, that we do not regard our ruling there as applicable in this case. Albrecht v. Slater, 233 S. W. (Mo. Sup.) 8, was ruled upon facts showing insufficient delivery, and the facts in Newell v. Edom, 242 S. W. (Mo. App.) 701, presented no semblance of a trust. In Pitts v. Weakley, 155 Mo. 109, it was sought to divest title from the prima-facie owner, and fasten a trust on the property. It does not follow that the requisite proof under such circumstances is any criterion in a case where the person in possession of the property disclaims any individual interest therein. In Jones v. Patterson, 271 Mo. 1, we held a trust void for uncertainty where the owner of land, by her will, gave it to her husband for life and declared that "at his death I want it placed in the hands of Clifford Patterson (my nephew) to be used for missionary purposes in whatever field he thinks best to use it, so it is done in the name of my dear Savior and for the salvation of souls." There is obviously no analogy between the trust there attempted, and the clear purpose shown by the evidence in this case.

II. Counsel for appellant also insist that the gift of this property should be held fraudulent and void on the grounds

**Attorney and Client.** that the relation of attorney and client existed between defendant and the deceased, and that of minister and communicant between Dr. Granger and the deceased.

The record is devoid of any showing that Dr. Granger was a donee or was ever consulted with regard to this gift. The notary who took Mrs. Burge's acknowledgment to the deed conveying certain real estate to A. W. Lincoln, trustee, said that he thought Dr. Granger asked him to go to the hospital, but he was not sure. As heretofore indicated this conveyance is not a part of the subject-matter of this proceeding.

Answering one of the interrogatories defendant said that he was acquainted with Ellen A. Burge in her lifetime and attended to some business for her in May, 1922. Neither he nor any witness in the case ever said that in attending to this business he acted as the at-

torney of Mrs. Burge, or that the relation of attorney and client ever existed between them. The evidence shows that his visits to the hospital were at Mrs. Burge's request and her gift of the notes and checks in question to him for the church as heretofore detailed reasonably and fully accounts for his presence there and refutes rather than implies the existence of the relation of attorney and client. Counsel for appellant say that defendant was sent for and was in consultation with Mrs, Burge when she destroyed her will, but as we read the record it does not show that defendant was even present on this occasion. Answering Interrogatory 16 defendant said that as president of the board of trustees of the Dever Benton Avenue M. E. Church he had paid certain debts at the request of Mrs. Burge, and among those listed was the following item: A. W. Lincoln, account for services, $17.25. Counsel for appellant cite this as evidence of the existence of the relation of attorney and client at the time the property was given, but we find no showing whatever in the record that these were legal services or that they were rendered in connection with the gift in question. The relation of attorney and client having neither been admitted nor proved, we cannot assume its existence.

III. In the foregoing paragraphs we have traversed the ground surveyed in appellant's brief, other points urged being merely derivative. Respondent's motion to strike out was withdrawn on oral argument. We have carefully considered the whole record and conclude that the case was well tried, that there was substantial evidence to support the finding and judgment in the circuit court, and the judgment should be affirmed. It is so ordered. All concur, except *Graves, J.,* absent.