Harold M. HULL, Appellant-Respondent,

v.

Mary J. HULL, Respondent-Appellant.

No. KCD 30191.

Missouri Court of Appeals,
Western District.

Dec. 3, 1979.

Theodore M. Kranitz, St. Joseph, for appellant-respondent.

Lee M. Nation, Kansas City, for respondent-appellant.

Before DIXON, P. J., and TURNAGE and CLARK, JJ.

CLARK, Judge.

Petitioner husband, Harold M. Hull, commenced an action to dissolve his marriage to Mary J. Hull and for orders respecting maintenance and for division of marital property. As the issues were joined, irretrievable breakdown of the marriage was not contested but maintenance and property matters were the subjects of extensive evidence and dispute. From the judgment ultimately rendered, the husband appeals the award of maintenance to the wife and takes issue with the failure of the court to apportion income tax liability in respect to 1977 earnings. The wife appeals the adjudication of nonmarital property made incident to the division of marital property.

The parties were married in 1941 and separated in 1976. Children born of the marriage are chronologically and financially

emancipated. The husband was a practicing attorney in Maryville for 29 years prior to January 1, 1977, when he became magistrate judge (now associate circuit judge) for Nodaway County. The wife has a college degree in primary education, an L.P.N. degree and has taken courses in pharmacology. With the exception of part-time work intermittently obtained, the wife has worked as a homemaker during the marriage and has had no employment since the separation.

Assets of the parties acquired during the marriage consisted of substantial real estate holdings titled in the husband's name and real estate and personal property jointly held. The judgment entry contains no recitation of property values, but a prior memorandum filed by the court does set forth the court's findings on these subjects.[1]

A farm tract of approximately 320 acres valued at $316,000.00 and a small tract of approximately fifteen acres valued at $28,500.00 were titled in the husband's name alone and were found by the court to be nonmarital property because acquired by the husband as gifts. Both were set off in the decree to the husband as his separate property. No separate property was assigned to the wife who was found to have no interest in nonmarital property. Exception is taken by the wife to the court's decision allotting the larger farm tract to the husband and its exclusion from division between the parties as marital property.

Marital assets included automobiles, furniture, antiques and miscellaneous personal possessions to which the memorandum did not assign individual values and the division of which is not presently in controversy. Additional marital assets which do bear on disputed issues were the family residence valued at $50,000.00, a rental house and a 3½-acre lot valued at $18,000.00 and cash and securities of the total value of $239,777.00.

In the division of marital assets, the wife was awarded the rental house and lot and $182,000.00 in cash. The husband was given the family home and the remaining cash and securities amounting to $57,777.00. The wife was awarded $500.00 a month as maintenance. Exception is taken by the husband to the maintenance award on the ground that it was unjustified in view of the substantial value of the marital property she received.

Initially, the issue, raised in argument, that the wife has waived or is estopped to appeal the division and award of marital property must be addressed.

Trial of this case was completed on March 30, 1978, on which date the court announced from the bench that dissolution of the marriage was decreed. Issues of maintenance and property division were taken under advisement. Thereafter, for reasons not apparent in this record, the court filed a memorandum noted above and dated April 7, 1978. While the memorandum did include a recitation of findings and referred to awards of property, no decretal language was used and the formal components of a judgment are absent. No indication of a signature to the memorandum appears in the transcript and the parties on oral argument were in agreement that the judge did not sign the memorandum.

The husband, apparently entertaining doubt as to the effect of the memorandum, filed a notice of appeal on April 10, 1978, but on May 1, 1978, he paid into the registry of the court $140,000.00 in partial satisfaction of the marital property distribution to the wife and $500.00 as the first installment of maintenance. On the order of the court concurrently made, these sums were paid to the wife by the circuit clerk.

An exchange of correspondence among the attorneys and the court followed the April 7, 1978 memorandum. The form and content of a judgment entry was debated and drafts of proposed entries were circulated indicating that the memorandum was, at most, a tentative statement of findings the court expected to announce. Actual entry of judgment was on May 10, 1978,

---

1. Such memorandum, as hereafter noted, is of doubtful import but is employed as a source for description and valuation of assets, the valuations of which were not significantly disputed.

and was at some variance from the memorandum, particularly as to apportionment of 1977 income tax liability. The record includes no reference to any payments made to the wife subsequent to the formal entry of the judgment.

■ As a general rule, a litigant who voluntarily accepts the benefits of a judgment cannot afterwards prosecute an appeal to reverse it. *Fear v. Ebony Paint Manufacturing Co.*, 238 Mo.App. 560, 181 S.W.2d 559 (1944); *Waddingham v. Waddingham*, 27 Mo.App. 596 (1887). The right to enjoy the fruits of a judgment and the right to attack it on appeal are inconsistent and an election to pursue one course is an abandonment of the other. *Knebel v. Knebel*, 189 S.W.2d 464 (Mo.App.1945).

■ In the subject case, the wife's appeal of the judgment dividing marital property includes the risk of a less favorable result as well as the prospect that her share of assets available for distribution will be increased. Were it not for the unusual sequence of entries by which partial benefits under the ultimate judgment were distributed to the wife, the authorities noted above could well operate to deny the wife concurrent opportunity to challenge the judgment and also enjoy its benefits. Here, however, the rule of estoppel or waiver is inapplicable, first, because the payment was voluntarily made by the husband without intercession by the wife either to require the payment or obtain its distribution and, second, because the payment actually preceded by some ten days the entry of judgment in the case. The question of why the husband tendered partial advance distribution of marital property is unanswered but immaterial. The wife's appeal is not barred in this record by application of doctrines of waiver or estoppel.

Next to be examined is the wife's contention that the trial court erred in declaring the farm to be the separate property of the husband with the consequence that this substantial asset was not subject to division as marital property under Section 452.330, RSMo 1978. As the decision on this question depended on whether the farm was acquired by gift or as compensation for legal services, we review the facts to ascertain if the result reached by the trial court is supported by substantial evidence and is not against the weight of the evidence. *Willimetz v. Willimetz*, 564 S.W.2d 631 (Mo.App.1978); *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976).

The subject farm was acquired by conveyance from a client. Some months before the deed was made, the client had retained the services of the husband for defense of major criminal charges and had paid in advance an agreed fee of $2,500.00. For reasons immaterial here, the client subsequently entered a plea of guilty in the criminal case and, in the judicial and procedural climate which then prevailed some 25 years ago, the death sentence was imposed and execution followed. Before her execution, the client conveyed the subject farm to a relative for life with the remainder interest to Harold M. Hull, the husband in this case. The husband succeeded to fee simple ownership in 1971 on the death of the life tenant.

■ Section 452.330, RSMo 1978 provides that all property which either or both spouses acquire during the marriage is marital property regardless of the record title unless the acquisition be by circumstances particularly qualified as exceptions. One of these exceptions and that which is applicable here is property acquired by gift. Property acquired during the marriage is presumptively marital property and will be treated as such until the presumption is overcome by showing application of one of the exceptions. The burden of proving the exception falls on the party attacking the statutory presumption. *C.B.H. v. R.N.H.*, 571 S.W.2d 449, 456 (Mo.App.1978). Whether or not a transfer is a gift is a question of fact. *Boyers v. Boyers*, 565 S.W.2d 658, 660 (Mo.App.1978).

Substantially all of the evidence as to circumstances which accompanied conveyance of the remainder interest in the farm property to the husband came from his testimony. No significant detail of that evi-

dence was contradicted. In brief, the evidence showed that Hull had previously represented this client in an estate matter and in a divorce and was retained when the criminal charges arose. The initial fee paid covered all services in the case and no fee was owed and no bill was later rendered or was outstanding. Services rendered by Hull in the criminal case were limited because the client chose to plead guilty.

In contemplation of the client's death by execution, she gave a power of attorney to Hull and requested that he sell her personal property, pay her debts and use the remainder for funeral expenses. She expressed gratitude to Hull for having stood by her after her arrest and during her prosecution. The deed of the farm property was not prepared by Hull, who had assumed by prior understanding that the farm was to be conveyed to a relative. Hull's knowledge that the remainder interest was to be his came only after the deed had been drawn and signed. The value of the farm in 1953 was approximately $34,000.00, with Hull's remainder interest being the value remaining after deducting the value of the life estate.

The wife argues that the husband's acquisition of the farm property arose from an attorney-client relationship and even though not accompanied by any express or implied agreement for the rendition of services, the transfer was motivated at least by past services performed if not by future services to be rendered. In this, she contends, she is entitled to share because her support as a homemaker equates her as a partner in the fruits of her husband's business.

■ A gift is a voluntary transfer of land or goods from one person to another made gratuitously and not upon any consideration of blood or money. *Starks v. Lincoln*, 316 Mo. 483, 291 S.W. 132 (1927); *Moore v. Smith*, 33 N.C.App. 275, 235 S.E.2d 102 (1977); Blackstone (2 Commentaries 440). A gift is a voluntary transfer of property without consideration or compensation as an incentive or motive for the transaction. *Pilkington v. Wheat*, 330 Mo. 767, 51 S.W.2d 42 (1932). A gift is a voluntary and gratuitous assignment of something by one without compensation to another who takes it without valuable consideration. *Browning v. Browning*, 551 S.W.2d 823 (Ky.App.1977).

■ The burden of proof to establish a gift therefore is essentially to demonstrate the negative, that is, to show that the transfer was without an exchange of payment, that no prior obligation was thereby discharged and that no future obligation was thereby incurred. In the present case, these elements were shown by the husband's testimony received without contradiction that the deed was made without his advance knowledge, that motivation for the conveyance was expressed in his client's concurrent expression of appreciation for past services and that all charges for services rendered and to be rendered were fully paid by the original retainer deposit of $2,500.00. Although some services in winding up the client's affairs were to be performed after her death, no evidence reflected any suggestion of additional fees contemplated and no fees were owed at the time the deed was made.

In arguing against characterization of the conveyance here as a gift, the wife confuses the restrictive meaning of the term "consideration" when applied to a transaction in goods or lands with general usage of the word in everyday affairs. In the sense of motivation, an appreciation for past personal and professional services was indeed the expressed consideration which impelled transfer of the remainder interest in the farm. Any gift no doubt is generated by some favorable climate or experience which evokes donative impetus. Such, however, is not the same quality of consideration, in the sense of value received, which precludes a transfer from being a gift.

So, too, it must follow that the prior experience of donor and donee here as client and attorney and the resulting gratitude expressed by the client as her reason for making the gratuitous transfer does not require that commercial attributes attach. The transfer here having been without compensation, it was a gift irrespective of how

the donative impulse was generated. The trial court correctly held the farm to be nonmarital property because acquired by the husband as a gift.

Even assuming the farm to have been a gift, however, the wife contends that the increase in value accruing thereafter and comprising at least three-fourths of current value is marital property because such increase was accumulated during the marriage and is not otherwise excludable under the statute. This she argues because Section 452.330–2(5), RSMo 1978 only excludes from marital property the increase in value of property acquired prior to the marriage. In furtherance of this point, the wife notes that family income was used to cover farm expenses and to retire farm debts and family assets were encumbered when loans were obtained by the husband for farm improvements.

The statutory directives for identification of marital and nonmarital property do not, as the wife here suggests, contemplate any subclassification whereby an asset in part partakes of the attributes of nonmarital property and in part is considered marital property. Thus, in *Conrad v. Bowers*, 533 S.W.2d 614, 624 (Mo.App.1975), one of the first cases construing the dissolution of marriage law, the court stated, "Such property [acquired after the marriage but in exchange for property owned prior to the marriage] would, if the presumption is overcome, remain the separate property of the spouse and upon dissolution be set apart to such spouse."

In *Stark v. Stark*, 539 S.W.2d 779, 782 (Mo.App.1976), this proposition was reinforced by the holding that the character of separate property is not altered because both spouses join in signing a note and mortgage encumbering the property and family funds are applied to discharge the debt. Finally, in *Davis v. Davis*, 544 S.W.2d 259 (Mo.App.1976), corporate stock owned by the husband prior to the marriage was held to have retained its status as separate property despite payment subsequent to the marriage for a major part of the purchase price of the corporate assets.

These authorities and the language of the statute require the conclusion that assets which are separate property retain that identity and are not subject to division by the court in a dissolution of marriage action regardless of changes in value by appreciation or depreciation. This is not to say, however, that a spouse may not be held to have contributed separate property to the marital accumulation if a clear intention thereof is evidenced. *Stark v. Stark, supra.* No such evidence was offered in the subject case where, to the contrary, it appeared that the husband preserved the separate character of the farm and, on at least one occasion, the wife refused to join in signing a note for a farm improvement loan because her name was not on the title to the real estate.

The spouse excluded from participation in the benefit of value appreciation to separate property is not, however, without appropriate compensation if marital assets have contributed to that increase. Thus, in *Cain v. Cain*, 536 S.W.2d 866, 875 (Mo.App. 1976), the court observed that retirement of the mortgage debt on the husband's separate property by use of money constituting marital property is a relevant factor for the court to consider in dividing marital property. This is not to say that the separate property thereby acquires the status of marital property or that the other spouse is entitled to benefit from value increases in the separate property resulting from independent forces of the marketplace and the economy. The increment to which this principle applies is that demonstrated to have come from marital resources and efforts.

In the present case, no such evidence was presented by the wife. We are uninformed as to the details of loans obtained for farm purposes, the amounts and sources of funds used for repayment, the disposition of farm income, if any, and the expenditure of marital resources for farm maintenance and improvements, if any. Such being the state of this record, we are similarly unable to determine the weight given these factors by the trial court in the division of marital

property and quite apparently are precluded from faulting on that account the property division which was made. No abuse by the trial court of its discretion in making a just division of marital property appearing, that division and the related disposition of separate property must be affirmed. *Arp v. Arp,* 572 S.W.2d 232 (Mo.App.1978).

Next, the husband assigns as error the award of maintenance to the wife contending, first, that the award cannot stand because not accompanied in the judgment by recitation of supporting facts enumerated in Section 452.335, RSMo 1978 and, second, that the award was not warranted by the evidence and was excessive.

Section 452.335, RSMo 1978 does limit the courts to awards of maintenance only when the spouse seeking maintenance lacks sufficient property to provide for reasonable needs and is unable to obtain support through appropriate employment. The judgment entry in this case is silent as to these factors. Of particular significance, however, is the absence in this case of any request by counsel in accordance with Rule 73.01(1)(b) for a declaration by the court of findings on controverted fact issues.

In *Stark v. Stark, supra,* it was held that Rule 73.01(2)(a) imposes no independent duty on the court to render findings of fact and, under the authority of *Noland v. Noland,* 527 S.W.2d 696 (Mo.App.1975), the fact issues are considered to have been resolved in accordance with the result reached in the case. While *Stark, supra,* involved division of marital property, *Broyles v. Broyles,* 555 S.W.2d 696 (Mo.App.1977) addressed the same issue in matters affecting the award of maintenance and held the same rule to be applicable. Where no party requests findings of fact, an award of maintenance is not deficient for failure to announce that the award is made in accordance with particular facts as to employment potential and property resources.

As to evidence bearing on the allowance of maintenance and the amount, the determination made by the trial court is discretionary and appellate review is only to determine if that discretion has been abused. *Sawtell v. Sawtell,* 569 S.W.2d 286 (Mo.App.1978). The fact of an order for maintenance having been made in this case presupposes that the trial court found the wife's reasonable needs to require supplement above the sums derived from marital property apportioned and income from possible employment.

Ascertainment of reasonable need involves consideration of several relevant factors which have been discussed at length in prior cases and which need not be discussed again here. It is sufficient to note that reasonable needs encompass the factors of the length of the marriage, *Brueggemann v. Brueggemann,* 551 S.W.2d 853 (Mo.App.1977); the standard of living enjoyed, *Butcher v. Butcher,* 544 S.W.2d 249 (Mo.App.1976); contributions toward development of the husband's earning capacity, *D__ E__ W__ v. M__ W__,* 552 S.W.2d 280 (Mo.App.1977); conduct of the parties during the marriage, *C.B.H. v. R.N.H.,* 571 S.W.2d 449 (Mo.App.1978) and the age and physical and emotional condition of the spouse. *In re Marriage of Cody,* 572 S.W.2d 635 (Mo.App.1978).

The wife in this case was 58 years of age at the time of trial and although in good health and trained in education and nursing, she had had no significant employment outside the home during 35 years of marriage. The family had enjoyed a comfortable standard of living consistent with an accumulated net worth of more than $200,000 in marital assets and more than $300,000 in the husband's separate property. Some evidence indicated marital misconduct by the husband.

The marital assets awarded to the wife in cash could yield, if invested at 7.25%, a sum sufficient to meet the wife's current expenses estimated conservatively. Such, however, does not take into account the expense of income taxes nor reduction of invested principal by expenditures for non-budgeted items. At the time of trial, the husband was receiving a salary of $19,-200.00 a year and the wife was not employed. While suggestion is made that the

wife is employable and should seek work and that the husband is not enjoying good health and suffered a reduction in income after the trial, these are appropriate subjects for consideration in a motion to modify the maintenance award, not in this appeal.

■ To warrant reversal or revision on appeal, the amount of maintenance granted must be patently unwarranted or wholly beyond the means of the spouse thereby obligated to pay. *Sawtell v. Sawtell, supra.* The facts in this case compel neither conclusion, particularly because the trial court possesses considerable discretion in the granting of maintenance. No abuse of that discretion appears.

Finally, the husband contends that the court erred in failing to reduce marital assets awarded to the wife by that amount of 1977 income taxes proportionate to the division of such assets. An assessment to this effect was included in the court's memorandum which preceded entry of judgment and provided that the wife would be obligated for payment of 76 percent of 1977 income taxes. This award, however, was not included in the judgment which omitted any mention of tax liabilities and their incidence.

■ The unsigned memorandum earlier discussed cannot be employed to inferentially charge error in the judgment because of variances between the two, as the husband suggests in his argument. The memorandum was of no dispositive import. The decretal provisions of the judgment control. They cannot be enlarged or diminished by findings or by a memorandum opinion, even though part of a single document. *Page v. Page*, 516 S.W.2d 537 (Mo.App.1974). Any alleged error by the trial court in failing to charge the wife with a proportionate share of 1977 taxes is reviewable as are the other decisions made by the court in the exercise of its discretion and as reflected in the judgment entered.

The husband understandably argues that because the wife received the greater portion of marital assets including, it must be assumed, a concurrent portion of proceeds remaining from 1977 earnings and income, she should pay an equal share of the tax imposed on that income. The difficulty encountered by the trial court on this subject and the impediment which appears to have prompted a dispositive change between the date of the memorandum and the entry of judgment was the disagreement of the parties as to how much tax was due.

From the memorandum, it would appear that the court was disposed to apportion the 1977 tax liability on the percentage ratio of the respective shares in marital assets. Such, however, would have required expression in the judgment entry of specific amounts rather than percentages because any other provision, such as with the use of percentages, would have been uncertain and unenforceable. *Faulkner v. Faulkner*, 559 S.W.2d 545 (Mo.App.1977).

■ As appears from correspondence exchanged among counsel for the parties and the court subsequent to filing the memorandum, disputes were encountered as to allocation of the husband's income between the years 1977 and 1978 and the computation of taxes. Although a percentage formula had been established, the figures to which the formula was to be applied were uncertain and counsel were in disagreement as to interpretation of tax reporting requirements. The court resolved the problem by the practical solution of omitting any allocation of tax liability between the parties. This result was entirely appropriate as an answer to the acrimonious dispute between the parties following expression of the court's proposed decision on other issues. The trial court was not the appropriate forum to litigate federal income tax questions. The result here leaves the parties in a position to continue their disputes over tax questions, if they so choose, before the tribunal accustomed and equipped to decide such issues.

The judgment is affirmed.

All concur.