**In re the MARRIAGE OF Carolyn Dean TENNANT and Karl Edmond Tennant.**

**Carolyn Dean Tennant, Petitioner–Respondent,**

**and**

**Karl Edmond Tennant, Respondent–Appellant.**

**No. 15746.**

Missouri Court of Appeals, Southern District, Division One.

April 19, 1989.

Motion for Rehearing or Transfer to Supreme Court Denied May 11, 1989.

Mark L. Richardson, Friedewald, Chadwick, Clark and Richardson, Poplar Bluff,

for petitioner-respondent Carolyn Dean Tennant.

Ted M. Henson, Jr., Poplar Bluff, for respondent-appellant Karl Edmond Tennant.

CROW, Presiding Judge.

Karl Edmond Tennant ("Karl") appeals from a decree dissolving his marriage to Carolyn Dean Tennant ("Carolyn"), complaining that the trial court erred in (1) dividing the marital real estate situated in Missouri, and (2) ordering Karl to pay Carolyn maintenance.

The parties were married September 2, 1957.[1] The union produced two children, both of whom were emancipated when Karl and Carolyn separated in August, 1985.

At time of trial the parties owned, as marital property, 251 acres of rural land in Missouri. It consisted of 40 acres in Butler County, 111 acres in Wayne County, and 100 acres in Ripley County. The parties also owned, as marital property, a residence in Poplar Bluff.[2]

The trial court's decree provided that Carolyn was to receive all the Missouri real estate. The decree then said:

"With regard to all real estate located in ... Missouri, ... all property is hereby sold at private sale by [Carolyn], and if not sold within six (6) months, then at public sale to the highest bidder. From the total proceeds of said sales shall be deducted all costs and expenses of sale, and [Carolyn] is to be reimbursed for actual out-of-pocket expenses for taxes and insurance on the property which she is ordered to pay and assume prior to said sales. All net proceeds are to be divided equally between the parties. [Karl] shall have a lien on the real estate to protect his one-half interest therein."

Karl's first point is:

"The trial court erred in dividing the marital property in directing the wife to sell the Missouri real estate without any restrictions being placed on the wife and in relinquishing to wife all authority concerning the sale because this was beyond the power of the trial court or at least an abuse of discretion and prejudicial to husband's interest."

During oral argument before us Karl's lawyer conceded that while this appeal was pending Carolyn had sold all the Missouri real estate pursuant to the trial court's decree, and that Karl had accepted all sums tendered to him as his share of the sale proceeds without requesting that such funds be held in the registry of the trial court pending the outcome of this appeal.[3]

■ The general rule is that a litigant who has voluntarily and with knowledge of all the material facts accepted the benefits of a decree or judgment of a court cannot afterwards take or prosecute an appeal to reverse it. *Central States Life Ins. Co. v. Lewin*, 342 Mo. 383, 115 S.W.2d 801, 801[1] (1938); *Hull v. Hull*, 591 S.W.2d 376, 379[1] (Mo.App.1979); *In re Marriage of E. A. W.*, 573 S.W.2d 689, 691[1] (Mo.App. 1978); *Knebel v. Knebel*, 189 S.W.2d 464, 466 (Mo.App.1945). The reason for the rule is that a party cannot proceed to enforce and have the benefit of such portions of a judgment as are in his favor and appeal from those against it—in other words, the right to proceed on a judgment and enjoy its fruits and the right to appeal therefrom are totally inconsistent positions, and the election to pursue one course must be deemed an abandonment of the other. *Central States Life Ins. Co.*, 115 S.W.2d at 801–02; *Hull*, 591 S.W.2d at 379[1]; *E. A. W.*, 573 S.W.2d at 691[1]; *Knebel*, 189 S.W.2d at 466.

■ There is an exception to the above rule: where a party accepts payment, after

---

1. Carolyn's testimony. Karl testified the date was September 2, 1958. His brief, however, gives the year as 1957.

2. The parties also owned, as marital property, 20 acres in West Virginia. No issue is raised in this appeal about the disposition of that property in the dissolution decree.

3. The record is barren of any indication that Karl filed a supersedeas bond per Rule 81.09, Missouri Rules of Civil Procedure (18th ed. 1987).

judgment, of items that were never in contest, such party is not barred from appealing. *Central States Life Ins. Co.,* 115 S.W.2d at 802; *Knebel,* 189 S.W.2d at 466[3]. That is, a party is not precluded from bringing an appeal where that party is so entitled to the sum collected or accepted that reversal of the judgment or decree will not affect his right to it. *E. A. W.,* 573 S.W.2d at 691[1].

■ The exception is inapplicable here, as Karl's right to receive half the net proceeds of the sale of the Missouri real estate was conferred by the provision in the dissolution decree providing for the sale of such real estate and for the equal division of the net proceeds between Carolyn and Karl. Having voluntarily accepted the proceeds of the sales conducted pursuant to that provision Karl is now foreclosed from challenging such provision on appeal.

Karl's second point is:

"The trial court erred in its maintenance order ... on the ground that there is no substantial evidence on which to base a finding by the trial court that wife lacks sufficient property, including the marital property apportioned to her, to provide for her reasonable needs and that wife is unable to support herself through appropriate employment and on the further ground that said maintenance order is not sufficiently certain in its terms to be susceptible of enforcement and does not specify with definitness [sic] and certainty the amount of maintenance husband is required to pay per month."

It is arguable from the cases referred to in our discussion of Karl's first point that inasmuch as he has pocketed the proceeds of the sale of the Missouri real estate provided for in the decree, he is barred from attacking the maintenance provision in that decree. We need not, however, decide that issue because, as henceforth explained, we find no merit in Karl's second point. We have opted to dispose of the point on the merits instead of addressing the more diffi-

cult issue of whether the point is precluded by Karl's acceptance of the sale proceeds.

At time of trial Karl, age 60, was employed by the Missouri Department of Conservation at an annual salary of $35,635. He had been employed by that agency throughout the marriage and, at time of trial, was eligible to retire. Carolyn testified without contradiction that had Karl retired at that time his monthly retirement benefit "would be somewhere around between $1,100.00 and $1,200.00." Karl, however, testified he had no plans to retire immediately, as he was financially unable to do so. He explained he could continue working until age 70, at which time he would "have to quit." There was no evidence as to what his monthly retirement benefit will be if he works until age 70.

The segment of the decree complained of by Karl's second point states:

"The Court finds [Karl's] pension interests with the State of Missouri specifically to be marital property, and further finds it to be fully vested and mature but not currently in pay status. Accordingly, [Karl] is ordered to pay to [Carolyn] one-half of each monthly annuity amount upon its receipt from the State of Missouri. In the interim, the Court finds that [Carolyn] is in need of financial support for herself and that [Karl] shall pay to her, as maintenance, ... Six Hundred Fifty Dollars ... per month. Said payments are modifiable and shall terminate upon her death or remarriage. Said payments shall further be reduced at such time as [Karl] retires and commences paying to [Carolyn] one-half of his monthly entitlement from the [Missouri state employees] Pension Plan, and any amount paid shall be credited against his maintenance obligation. In any event, [Carolyn] shall receive from [Karl] one-half of his monthly retirement benefit, or ... Six Hundred Fifty Dollars ..., whichever is greater."

Section 452.335.1, RSMo 1986,[4] provided:

"In a proceeding for ... dissolution of marriage ... the court may grant a

---

**4.** Section 452.335 was amended effective August 13, 1988, by Laws 1988, H.B. 1272, et al., pp.

951-67. The amendment occurred after entry of the decree in the instant case.

maintenance order to either spouse, but only if it finds that the spouse seeking maintenance

(1) Lacks sufficient property, including marital property apportioned to him, to provide for his reasonable needs; and

(2) Is unable to support himself through appropriate employment...."

Carolyn testified she worked 23 years "full time" for various employers during the marriage. She described her jobs as "secretarial-clerical," for which she was paid "somewhere around minimum wage." Carolyn ceased working full time in 1978 because of "poor health." She listed her health problems as severe migraine headaches that were continually growing worse, diminishing kidney function, susceptibility to infection, high blood pressure, removal of her thyroid gland, and recurring hypertension. She was on medication at time of trial and expected to remain on it the rest of her life. Since 1978 she had worked only part-time, and was no longer doing even that because, according to her, she was unable. Carolyn added that her job skills had been diminished because of her "long absence from the work market."

*Lowrey v. Lowrey*, 633 S.W.2d 157, 160[1] (Mo.App.1982), holds that appellate review of a maintenance award is governed by *Murphy v. Carron*, 536 S.W.2d 30, 32[1] (Mo. banc 1976). The decree will be sustained unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law.

■ Karl's second point makes two attacks on the maintenance award. The first is that there was no substantial evidence to support a finding that Carolyn lacks sufficient property, including the marital property apportioned to her, to provide for her reasonable needs and that she is unable to support herself through appropriate employment. In support of that contention Karl cites one case, *Beckman v. Beckman*, 545 S.W.2d 300 (Mo.App.1976), where the trial court's denial of maintenance to a 51-year-old wife on dissolution of a 29-year marriage was upheld. There, however, the wife was awarded marital property including $124,000 for her interest in certain corporations and, unlike the instant case, the wife in *Beckman* was employed at time of trial.

According to the evidence in the record here, the aggregate value of the Missouri real estate was, at most, $120,300. It is thus likely that Carolyn's share of the sale proceeds did not exceed $60,000. The only other asset of significant value awarded her (except the interest in Karl's pension benefits, when eventually received, which we shall discuss *infra*), was $10,000 cash which Karl was to pay within 90 days after entry of the decree. Carolyn's testimony amply supports a finding that she is physically unable to hold full time employment.

We deem the evidence sufficient to support a finding that Carolyn at time of trial lacked sufficient property, including marital property apportioned to her, to provide for her reasonable needs and that she was unable to support herself through appropriate employment. The requirements for awarding maintenance under § 452.335.1 were therefore satisfied and Karl's contention to the contrary is denied. As Karl did not argue in his brief or orally that the *amount* of the maintenance is exorbitant, but only that Carolyn was ineligible to receive maintenance, we need not consider whether $650 per month could have been successfully challenged as excessive.

■ The second attack on the maintenance award in Karl's second point is that the order is not sufficiently certain in its terms to be susceptible of enforcement and does not specify with definiteness and certainty the amount of maintenance he is required to pay per month. Specifically, Karl asserts that if half the monthly retirement benefit he receives exceeds $650 "the decree will be too indefinite and uncertain to be enforced."

We disagree. The decree, as we read it, sets Carolyn's maintenance at $650 per month and provides that when she begins receiving half of Karl's monthly retirement pay—the trial court treated Karl's vested pension rights as marital property and awarded Carolyn a half interest in the benefits (when received) as her share of such

property [5]—Karl shall receive a credit against the maintenance equal to the amount of the retirement pay received by Carolyn. Whether the trial court was correct in allowing Karl a credit for Carolyn's share of the retirement benefits (*marital property*) against the $650 per month *maintenance* is not before us, as Carolyn did not appeal. Accordingly we need not, and do not, consider that question.

What is before us is an order for a definite amount of monthly maintenance—$650—with a provision for a credit that may ultimately equal the maintenance figure.

It was obviously impossible for the trial court to know what the precise amount of Karl's monthly retirement benefits will be when he begins receiving them. Having determined that Carolyn was entitled to half those benefits as marital property when such benefits are received, the trial court made the decree as specific as possible.

In *Kuchta v. Kuchta*, 636 S.W.2d 663, 666 (Mo. banc 1982), the Supreme Court of Missouri explained that one solution to the problem of dividing pension rights in dissolution cases is to set forth in the decree a certain percentage of the retirement benefits to be paid to the non-working spouse if and when the working spouse retires and begins to receive them. This method renders it unnecessary for the court to compute the present value of the pension rights, and divides equally the risk that the pension will fail to mature. *Id.* That is what the trial court did here. Other cases where the same method has been employed include *Harper v. Harper*, 764 S.W.2d 480 (Mo.App.1989); *Stoerkel v. Stoerkel*, 711 S.W.2d 594 (Mo.App.1986); *Weiss v. Weiss*, 702 S.W.3d 948 (Mo.App.1986); and *Hagerman v. Hagerman*, 682 S.W.2d 28 (Mo.App.1984).

The only case cited by Karl in support of the second component of his second point is

*Taylor v. Taylor*, 367 S.W.2d 58 (Mo.App. 1963). That case is inapposite, as it concerned a provision in a divorce decree (prior to the advent of the dissolution of marriage act, Laws 1973, H.B. 315, pp. 470–79, effective January 1, 1974) where the amount of alimony the ex-husband was required to pay could be computed only by reference to extrinsic information regarding his net income. In the instant case the amount of maintenance is clearly fixed at $650 per month, and Carolyn's share of Karl's retirement pay (when received) is clearly fixed at one-half. The only calculation that may ultimately have to be made is the amount of credit to which Karl will be entitled against the $650 per month maintenance obligation when Carolyn starts receiving half his retirement pay.[6] The amount of the credit can be precisely determined. The second component of Karl's second point is without merit.

The decree of dissolution of marriage is affirmed.

HOLSTEIN, C.J., and GREENE, J., concur.

---

5. For a discussion of pension rights as marital property and the methods of handling them in dissolution decrees see *Haun v. Haun*, 677 S.W.2d 927 (Mo.App.1984).

6. The need for making that calculation may never arise. If Carolyn remarries before Karl

begins receiving retirement pay his maintenance obligation will cease. § 452.370.2, RSMo Supp.1988. Carolyn's right to half of Karl's retirement pay as marital property, however, will remain intact.