Katherine J. MILLMAN, Appellant,

v.

James S. MILLMAN, Respondent.

No. ED 91078.

Missouri Court of Appeals,
Eastern District,
Division One.

March 3, 2009.

Katherine S. Walsh, Thomas W. McCarthy, McCarthy, Leonard, Kaemmerer, Owen, Lamkin & McGovern, Chesterfield, MO, for Appellant.

Cary J. Mogerman, Melody E. Noel, Zerman & Mogerman, St. Louis, MO, for Respondent.

KURT S. ODENWALD, Presiding Judge.

### Introduction

In this dissolution of marriage action, Katherine Millman, now known as Katherine Jordan (Wife) appeals from the trial court's Amended Family Court Judgment and Decree of Dissolution of Marriage (Amended Judgment). Wife challenges neither the dissolution nor child custody provisions of the Amended Judgment. Neither does Wife appeal

from any provisions of the Amended Judgment relating to the distribution of property or other financial awards made by the trial court. Wife's appeal focuses exclusively on her contention that the trial court erred by including in the Amended Judgment the provision that "[n]either party shall provide, divulge, distribute, disseminate, discuss or otherwise disclose any confidential documents or financially related information or terms herein that can reasonably be expected to negatively impact upon the parties' minor children, the parties' or either party's personal and business interests." Because Wife has accepted substantial benefits of the Amended Judgment, we hold that she is estopped from asserting her claim of error. This appeal is dismissed.

## Background

Husband and Wife were married on June 18, 1983. Four children were born of the marriage: one emancipated daughter born on March 5, 1986; B.M., born on July 23, 1987; C.M., born on August 4, 1990; and T.M., born on March 22, 1999. Husband and Wife separated in September 2004. Wife filed her Petition for Dissolution of Marriage in St. Louis County on November 29, 2005, seeking the following relief: (1) dissolving the marriage; (2) granting and awarding the care, custody, and control of the minor children to Wife and Husband; (3) ordering Husband to pay Wife reasonable child support; (4) ordering Husband to pay Wife reasonable maintenance; (5) ordering Husband to pay the college costs of the parties' children; (6) ordering Husband to provide life insurance on his life with Wife as beneficiary; (7) setting apart to each party his or her separate property and dividing the marital property in a manner that the court

deemed appropriate; (8) ordering Husband to pay Wife a reasonable amount for her attorneys' fees and costs; (9) restoring Wife's maiden name of Jordan; and (10) dividing all of the marital debt of the parties. On December 20, 2005, Husband answered and counterclaimed, also seeking dissolution of the marriage. Both parties agreed that the marriage was irretrievably broken.

### Preliminary Injunction

On October 25, 2006, Husband filed his Verified Application for Temporary Restraining Order Without Notice and Preliminary Injunction Pursuant to Rule 92.02 [1] (Application for TRO) and his proposed Preliminary Injunction Pursuant to Rule 92.02. In his Application for TRO, Husband stated, in pertinent part, that upon information and belief, Wife "made numerous verbal statements to third parties about [Husband] which are untrue, inflammatory, libelous and are calculated to harass, annoy, demean, and otherwise damage the personal and business reputation of [Husband] in his community." Additionally, Husband alleged that Wife "made unsubstantiated allegations against [Husband] which directly bear on the custody and visitation issues in this case, and if made public, may further damage the personal and business reputation of [Husband] in his community and may, as a result cause[ ] dissipation of the separate assets of [Husband] and/or the marital estate."

On November 21, 2006, the trial court entered the parties' Interim Parenting Plan Regarding [T.M.] and Other Orders and the parties' Judgment for Partial Distribution of Marital Property and Other Orders Pendente Lite. On the same day, the trial court also entered the order for a Preliminary Injunction. The terms of

---

1. All rule references are to the Missouri Supreme Court Rules (2008).

the Preliminary Injunction prohibited both parties from discussing or otherwise disclosing documents or other information, "that can reasonably be expected to negatively impact upon the parties' minor children, the parties' or either party's personal and business interests and/or the marital estate." The order noted that Wife waived any objection to notice of hearing on the motion. Additionally, the order stated that "[t]he terms of this Preliminary Injunction shall be incorporated into, merged, and made a part of the Family Court Judgment herein."

## Terms of Settlement "Spread on the Record"

The parties appeared for trial on October 2, 2007. Prior to the beginning of trial, the trial court announced that the parties were prepared to settle the matter and place the terms of that settlement on the record. Wife's counsel orally presented to the trial court a summary of the terms of the settlement agreement that had been concluded by the parties. Husband and Wife both testified under oath that their marriage was irretrievably broken. The record shows that the parties agreed to the following terms of settlement:

### Custody

The parties agreed that there were three different parenting plans: one for T.M., with Wife as the residential parent; one for B.M., with Wife as the residential parent; and one for C.M., with Husband as the residential parent.

### Residential Property

The two pieces of residential real estate, one located in Pacific, Missouri (the Pacific Property) and the other located in St. Albans, Missouri (the St. Albans Property) were awarded to Wife. Husband was permitted to stay in the Pacific Property until October 26, 2007, at which time he could move to the St. Albans Property where he could stay until December 31, 2007. The debt on the Pacific Property was to be satisfied in full by Husband on or before December 31, 2007. The 2007 real estate taxes for both properties would be divided equally and paid by the parties. Wife would receive the contents of both residences except for Husband's personal property, which included a coin collection, an autographed baseball, and exercise equipment. Wife would receive the Marc Chagall and Salvador Dali paintings.

### Automobiles

Wife would receive the 2005 BMW 645, the tractor, and the John Deere Gator. Husband would receive the 2002 Dodge Ram Truck and the 2006 Mercedes. The parties agreed that the 2002 Nissan Xterra was purchased for the benefit of their emancipated daughter and that it would remain with her.

### Bank Accounts

The parties agreed that they would retain each of their own bank accounts, opened in their own separate names, at Bank of America. Additionally, Husband would retain the Sterling Bank CD in his name. Any accounts that were opened for the benefit of any of the children would remain the property of the children. The marital portion of any accounts located at Johnson, Bender & Company would be awarded to Wife. Wife would also receive two J & B Company SEI accounts and two Fidelity accounts. Wife would receive the Woodbury Financial Services account listed in her name, the Calvert Tax Free Reserve money market account and a second money market account. Husband and Wife would divide equally the Boston Capital tax credit fund account. The Ameritas annuity contract and two American Scandia annuity contracts listed in Husband's name would become Wife's property. The two retirement plans, one in Husband's

name and one in Wife's name, would both become Wife's property. The John Hancock 401(k) plan in Husband's name would become Wife's property.

### Business Property

Husband was to receive all of the assets and liabilities of Hamilton Metals, Inc. and TBC Investments, LLC. The parties agreed to dissolve the trust holding the HMI, Inc. stock, or alternatively, that Husband would have the right to amend the trust so that he would become the sole trustee and beneficiary thereof. Husband and Wife would equally divide the assets and liabilities of Milmo Interests, LP, and would each receive fifty percent of any tax loss carry forward and tax depreciation for that company, fifty percent of any Milmo tax depreciation, and any Midwest Investments depreciation.

### Cash Payment

Husband was to make a cash payment to Wife totaling $14,250,000, payable as follows: $4,000,000 on or before December 31, 2007, and then $1,000,000 per year, payable on or before December 31 of each year, until paid in full. No interest would accrue for the first two years (2008 and 2009). Beginning on January 1, 2010, interest would accrue at the rate of 5% on the unpaid balance. Monthly interest payments would begin at that time. There would be no prepayment penalty, and security would be in the form of the judgment.

### Promissory Notes

Husband is to receive certain promissory notes totaling $8,000,000 in principal, with interest totaling approximately $500,000.

### Shareholder Note

Husband is to receive the balance due from HMI pursuant to the shareholder note.

### Bond Refund

Wife would receive a bond refund for $2260 from a case known as *Rodenburg v. Millman*.

### Insurance

Husband is to maintain medical insurance for the children. The parties are to divide equally any uncovered medical expenses. Special language was to be included in the agreement regarding the possibility of B.M.'s need for medical assistance past the age of 21.

### Educational Expenses

The parties' minor child T.M.'s educational expenses at Chesterfield Day School are to be equally divided. The parties' minor child C.M.'s educational and tutoring expenses are to be paid by Husband. The parties' son B.M. had been attending the University of Colorado at Boulder prior to sustaining a head injury, and that if B.M. were able to return to school, those costs would be equally divided by the parties, with a maximum based upon the language of the statute or the *Echele* decision with the University of Colorado at Boulder as the maximum. If the parties were able to use monies in the trust for the children for college, they would do so.

### Maintenance

Each party waived maintenance from the other.

After Wife's counsel "spread on the record" a summary of the agreement, the following exchange took place:

[Wife's counsel]: Did I miss anything?

[Husband's counsel]: Not to my knowledge. I believe that that is a complete recapitulation of what we agreed to, Your Honor, with the sole exception being—it's my understanding the Court intends to enter some kind of an order

relating to documents in the case, subject to drafting.

The Court: Subject to drafting. And I'll give you 36 hours. But I'm going to enter the dissolution today, okay? I am going to ask you to have [Wife] take the stand and go through the standard testimony regarding the marriage being irretrievably broken, and then to confirm that this is her agreement. And then I will ask [Husband] to confirm that this is the agreement.

[Wife's counsel]: Fine.

Both Wife and Husband then testified that Wife's counsel correctly stated the terms of the settlement agreement concluded by the parties. The trial court having heard the testimony of the parties found there was no likelihood that the marriage between the parties could be preserved, but instead found it was irretrievably broken. The trial court further stated, "in the event the parties fail to execute and file the separation agreement and the specific terms and cannot agree upon the terms, the parties have agreed that the Court may enter a decree of dissolution [per] the testimony which has now been presented." In addition, the trial court entered an order, which was executed by all counsel and by the parties, stating:

Cause heard and continued pending the filing of a separation agreement by 10/19/07. In the event the parties fail to execute and file the separation agreement, the parties agree that the court may enter a decree of dissolution per the testimony presented. Upon the filing of the agreement the case is submitted.

**Post "Settlement" Events**

Pursuant to the terms of the agreement, Husband was required to vacate the Pacific Property by October 26, 2007, which date was extended by subsequent agreement to November 5, 2007. Husband secured alternative housing for himself, the parties' minor child C.M., for whom Husband was awarded sole physical custody, and the parties' 22–year–old emancipated daughter. Husband vacated the Pacific Property per the requirement of the agreement. Since that time and under the terms of the settlement and judgment, Wife received substantially all of the contents of both residences, valued at approximately $108,000.

The parties were unable to reduce the stated settlement to writing. On November 21, 2007, Husband filed his Motion for Entry of Family Court Judgment and to Enforce Settlement Agreement, along with a Proposed Family Court Judgment and Decree of Dissolution of Marriage. On November 29, 2007, Wife filed her Motion to Clarify the Settlement Agreement and for Entry of Judgment, along with a Proposed Family Court Judgment, Order and Decree of Dissolution. Wife also filed her Motion to Dissolve Preliminary Injunction on that day.

On December 3, 2007, the parties appeared before the trial court to argue their respective motions. Wife argued that Family Court judgment should provide for security for the $14,000,000 cash judgment, that the court should declare that the cash judgment was not dischargeable in bankruptcy, and that Wife should be indemnified on certain promissory notes. Additionally, she argued that there was no agreement between the parties to incorporate the preliminary injunction into the final order. Husband argued that the parenting plan, property payments, and terms of the preliminary injunction were items negotiated together, and that the preliminary injunction was entered in November 2006 in exchange for the parenting plan. Husband argued that all of the terms were negotiated by counsel, including the term

to incorporate the provisions of the preliminary injunction into the final judgment.

On December 5, 2007, the trial court entered its Family Court Judgment and Decree of Dissolution of Marriage. In that judgment, the trial court ruled that a lien against the property of a non-party, HMI, was not contemplated by the settlement as presented to the trial court on October 2, 2007, and that the transcript from that date did address the issue by providing that security would be in the form of the judgment. The trial court held that it had no control over Husband's ability to file bankruptcy and would not attempt to make such a ruling.

Regarding the permanent injunction, the trial court found:

Third, [Wife] objects to [Husband] having included in his proposed judgment the continuation of the previous ruling of this Court which is contained in November 2006, Preliminary Injunction. Review of this document clearly shows how this was a prohibition of either party disclosing information obtained in the course of these proceedings to others outside of the need to know. This case has significant and multiple business implications and continues to have the same post dissolution. Such a prohibition is appropriate and in fact was part of all pre trial hearings.

Finally, regarding Wife's request for indemnification on the promissory notes, the trial court refused to make such a provision as the notes are not liabilities and Wife is not the payee.

The trial court thereby ordered that the marriage of Wife and Husband was dissolved, and *inter alia*, ordered, "Neither party shall provide, divulge, distribute, disseminate, discuss or otherwise disclose any confidential documents or financially related information or terms herein that can reasonably be expected to negatively impact upon the parties' minor children, the parties' or either party's personal and business interests."

The trial court also entered a separate Judgment/Order that all documents from this matter be placed in a sealed depository to be maintained by Husband's counsel for a period of five years.

Shortly thereafter, on December 31, 2007, as required by the Family Court Judgment and Decree of Dissolution of Marriage, Husband satisfied the then-existing $631,598 mortgage on the Pacific Property. Also pursuant to the terms of the settlement and judgment, on December 31, 2007, Wife received and accepted a $4,000,000 payment from Husband as the first installment of Wife's judgment against Husband.

On January 2, 2008, based on the judgment and order entered, Wife filed her Verified Motion to Amend and/or for New Trial (Wife's Motion to Amend) regarding the trial court's judgment, and her Motion to Vacate Judgment/Order regarding the order to seal the file. Husband filed a Motion to Amend Judgment.

Wife's Motion to Amend alleged errors, including the absence of the permanent injunction in the record made of the terms of the settlement. Wife also objected that the inclusion of a permanent injunction was an undue restriction on her constitutional rights, especially because the injunction was entered without a hearing.

Husband's Motion to Amend Judgment addressed one point regarding tax issues. He objected to a paragraph providing that any deficiency in previous tax returns would be assumed by the party that understated income or overstated deductions, but that any refund from past tax years would be divided equally. Husband's objection was that there was no agreement

that such a provision would be included in the Judgment.

The trial court held a final hearing on January 15, 2008, on both Wife's and Husband's motions. Following this hearing, the trial court entered the Amended Judgment on February 5, 2008. On the same day, the trial court entered a separate Judgment to set aside the previous Judgment/Order "relative to the requirement that [Wife's] files be maintained in a seal depository" and that "said entire Judgment is vacated."

The final Amended Judgment retained the language contained in the original judgment regarding confidential documents, ordering, "Neither party shall provide, divulge, distribute, disseminate, discuss or otherwise disclose any confidential documents or financially related information or terms herein that can reasonably be expected to negatively impact upon the parties' minor children, the parties' or either party's personal and business interests."

Before the Amended Judgment was filed by the trial court, Wife requested transfer of various financial properties, which she claimed under the agreement reached by the parties. Husband transferred and Wife began to receive the entire marital portion of the parties' accounts with Johnson, Bender & Company, totaling $8,035,694 at the time of the settlement and judgment.

Soon after the Amended Judgment was entered, Wife prepared quit claim deeds, which Husband executed on February 14, 2008, conveying title for both the Pacific Property, valued at $675,000, and the St. Albans Property, valued at $1,700,000. Husband forwarded the documents to Wife on February 15, 2008.

On March 14, 2008, Wife filed a timely notice of appeal from the final Amended Judgment. Husband filed a Motion to Dismiss Wife's appeal on May 7, 2008, wherein he contended that, having accepted in excess of 50% of the judgment, Wife's appeal of said judgment should be barred. Wife filed a response thereto, claiming that Husband's Motion to Dismiss was premature because Wife had not yet submitted her brief outlining which aspects of the Amended Judgment she challenged on appeal. Husband later amended his Motion to Dismiss to include information that he made another installment payment to Wife on December 22, 2008, pursuant to the terms of the agreement and Amended Judgment, amounting to $1,000,000, of which $959,439.72 was paid to Wife, and $40,560.28 was paid into the court's registry pursuant to an attorney's lien filed by Wife's previous counsel.

This Court addresses Husband's Motion to Dismiss with this appeal.

*Points on Appeal*

Wife raises two points on appeal. In her first point, Wife alleges the trial court erred in including a permanent injunction in the Amended Judgment because (1) entry of a permanent injunction was not a term agreed upon in the settlement negotiations between the parties; (2) entry of a permanent injunction is a violation of Wife's constitutional rights under the United States Constitution; and (3) the terms of the permanent injunction are not definite in its terms and are so overbroad as to be unenforceable.

In Wife's second point, she claims the trial court erred in entering its Amended Judgment based on the alleged terms of the settlement that were presented in the hearing on October 2, 2007, because (1) the parties did not complete a settlement agreement and therefore, no "meeting of the minds" existed between the parties on some or all of the terms of the settlement;

and (2) the Amended Judgment included terms that were not agreed to by the parties and were never reduced to writing until inserted by the trial court in the Amended Judgment. At issue in Wife's second point are the terms of the Amended Judgment that relate to the non-disclosure of confidential documents or financial information obtained during the course of discovery.

## Discussion

Before we address Wife's points on appeal, we turn our attention to Husband's Motion to Dismiss. Generally, a litigant who voluntarily accepts the benefits of an order, decree, or judgment of a court cannot afterwards prosecute an appeal to reverse it. *Reynolds v. Reynolds*, 861 S.W.2d 825, 828 (Mo.App. E.D.1993). The general purpose behind this rule is that a party should not be able to enjoy the fruits of a judgment, and at the same time, appeal that judgment. *Id.* "[T]he right to proceed on a judgment and enjoy its fruits and the right to appeal therefrom are totally inconsistent positions, and the election to pursue one course must be deemed an abandonment of the other." *Hicks v. Hicks*, 859 S.W.2d 842, 845 (Mo. App. W.D.1993), *citing In re Marriage of Tennant*, 769 S.W.2d 454, 455 (Mo.App. S.D.1989). Courts have not applied this rule as strictly in marriage dissolution cases because of the peculiar situations of the parties and the equitable considerations applied. *Hicks*, 859 S.W.2d at 845.

Included in the factors that have been considered in finding such an acceptance to be an exception to the general rule, and thus allow the accepting party to appeal, are the following: (1) the amount received was a small portion of the total judgment; (2) the amount accepted has effectively been conceded to be due by a spouse who did not appeal; (3) the accep-

tance of the benefits was due to financial distress; (4) the absence of prejudice to the judgment debtor spouse; and (5) where the only issue on appeal is whether an award will be increased. *Id., citing Smith v. Smith*, 702 S.W.2d 505, 507 (Mo. App. S.D.1985) (citations omitted). In deciding whether a party's partial acceptance of benefits of an order or judgment in a dissolution case constitutes a waiver of the accepting party's right to appeal, we must consider all relevant circumstances on a case-by-case basis. *Hicks*, 859 S.W.2d at 846. Our review of the individual facts of this case and analysis of the factors discussed in *Hicks* leads us to conclude that application of the general rule is indeed appropriate and equitable.

### Amount Accepted was not Conceded by Husband

In opposing Husband's Motion to Dismiss, Wife relies heavily on the second factor discussed in *Hicks*. Wife argues that the monies and property accepted by her from Husband were conceded to be due by Husband who did not appeal. Wife suggests that this factor is controlling because Husband, without demand from Wife, paid Wife the $4,000,000, relinquished possession of both marital residences and their contents, and paid the mortgage on the Pacific Property. Wife argues that Husband's transfer of the property was voluntary, and that *Hull v. Hull*, 591 S.W.2d 376, 379 (Mo.App. W.D. 1979), is instructive because in *Hull*, the wife was allowed to pursue her appeal where her husband had voluntarily paid the marital property distribution and the first installment of her maintenance award. In *Hull*, the husband actually made payment prior to the entry of any formal judgment by the court at a time he doubted the effect of an informal memorandum from the judge. *Id.* at 378.

■ The facts of this case are distinguished from *Hull* and those cases following *Hull*'s reasoning. Unlike *Hull*, where the parties proceeded to trial, Husband and Wife were found by the trial court to have reached a settlement. The parties placed the material terms of the settlement on the record. In this case, Husband paid to Wife what was owed by him at the times specified by the terms of the parties' settlement, as memorialized in the Amended Judgment. For instance, the terms of the agreement required Husband to vacate the Pacific Property by November 5, 2007, which he did. Husband thus secured alternative housing for himself and two of the parties' children. Since that time and under the terms of the settlement and Amended Judgment, Wife received substantially all of the contents of both residences. Moreover, the Amended Judgment required Husband to pay off the $631,598 loan on the Pacific Property on December 31, 2007, which he did. Also pursuant to the terms of the settlement and Amended Judgment, on December 31, 2007, the date specified by their agreement, Wife received and accepted a $4,000,000 payment from Husband, which represented the first installment of Wife's judgment against Husband. Before the Amended Judgment was filed by the trial court, Wife requested transfer, and began receiving the entire marital portion of the parties' accounts with Johnson, Bender & Company. Additionally, prior to Wife filing her appeal, Wife's counsel prepared quitclaim deeds, which Husband executed on February 14, 2008, and sent to Wife the following day, conveying title for both the Pacific Property, valued at $675,000, and the St. Albans Property, valued at $1,700,000. Wife argues that each of these transfers and actions were "voluntarily" conceded by Husband. Wife's position ignores a critical fact regarding Husband's actions. Each transfer of possession,

property, and money by Husband to Wife occurred pursuant to the terms of a mutual settlement agreement, the terms of which had been placed on the record, under oath, in a court of law. Husband performed his obligations as he understood were required by the settlement agreement, nothing more. In light of these facts, we cannot conclude that Husband's acts in transferring possession, title and property to Wife was "voluntary" in the context of *Hull*. Wife filed her notice of appeal from the final Amended Judgment on March 14, 2008, only after Husband had proceeded to honor his obligations under the settlement agreement.

■ We agree with the general statement that "one who accepts payment after judgment of items which were never in contest, is not debarred from appealing." *Fear v. Ebony Paint Mfg. Co.*, 238 Mo. App. 560, 181 S.W.2d 559, 562–63 (1944). However, as we critically analyze the individual facts of this case, as we must, we cannot apply this general rule when, as here, the accepting spouse leads the debtor spouse to believe an agreement is in place, accepts the benefits of such agreement, and then attacks the very agreement to which the debtor spouse had adhered. Specifically, in light of Wife's attacks on the settlement terms, we cannot find that the items at issue were "never in contest." Given the nature of this settlement and Amended Judgment, the pertinent terms of which were "spread on the record" by Wife's attorney, it appears from the record that Wife accepted payment of items that were negotiated between her and Husband. The record shows that the issue of the injunction and non-disclosure of confidential financial information was a part of the negotiated terms between Husband and Wife. Husband argued to the trial court at the December 3, 2007 hearing, that the parenting plan, property pay-

ments, and preliminary injunction were items negotiated together. In exchange for the parenting plan, the preliminary injunction was entered in November 2006. Husband argued that all of the terms were negotiated by counsel, including the term to incorporate the non-disclosure requirements of the preliminary injunction into the final judgment. Given the peculiar facts of this case, where there is a negotiated settlement to which both parties have testified, we cannot find that the transfer of property or payments at issue were uncontested or conceded by Husband. We do not find that Husband's actions were "voluntary." To the contrary, Husband's actions were required by the terms of settlement placed on the record before the trial court.

Nor do we find that the issue of the injunction is a completely separate issue from the benefits accepted by Wife, divisible on appeal. To the contrary, the record reveals that the issue of the injunction and non-disclosure of information was substantially intertwined with other issues brought by the parties before the trial court. A limited appeal of the trial court's inclusion of the non-disclosure language in the final Amended Judgment causes this Court concern that Wife seeks to use the issue of the injunction disingenuously as means of disrupting an otherwise uncontested and negotiated settlement agreement.

The record reveals that the question of the injunction, or "some kind of an order relating to documents in the case," was considered, albeit casually, at the settlement hearing in which the parties "spread on the record" their negotiated terms. Given the record before us, we see no error in the trial court's acknowledgment that the parties had previously negotiated an agreement by which a preliminary injunction was entered, and included in the language of the preliminary injunction that the non-disclosure requirements of the injunction would be incorporated into the final judgment. The terms of the settlement that were placed upon the record during the hearing were in many ways dependent upon that inclusion of the non-disclosure language of the preliminary injunction. Following Wife's counsel's recitation of the terms of settlement before the trial court, Husband's counsel immediately commented on the Court's inclusion of language relating to the documents. Wife did not raise any objection to these comments. Given the fact that the Amended Judgment is based upon terms of settlement agreed by the parties, we are unable to find that Wife's right to the cash payment and properties (and Husband's payment in full of the property debt) is divisible and separate from the non-disclosure terms of the Amended Judgment upon which Wife now bases her appeal. This Court will not speculate as to how the financial and custody terms of the settlement may have changed should the non-disclosure language not have been included in the terms of settlement. Given the authority granted to the trial court by the parties to "enter a decree of dissolution per the testimony presented" after settlement terms were stated upon the record, we conclude that the non-disclosure terms of the preliminary injunction were not a separate and distinct matter upon which Wife might be entitled to prevail on appeal irrespective of the merits of the divorce, division of property and debt, child custody and support, and maintenance.

Having voluntarily accepted the cash payments and the property awards pursuant to the settlement and Amended Judgment provisions, Wife is now foreclosed from challenging such provisions on appeal. *See In re Marriage of Tennant,* 769 S.W.2d at 454.

### Wife's Appeal Seeks Relief Other Than Increasing Award

■ Where the only issue on appeal is whether an award will be increased, "the acceptance or use of that property actually awarded should not be held to constitute a waiver of the right to appeal." *Anderson v. Anderson*, 72 Wis.2d 631, 242 N.W.2d 165, 169 (1976), *cited by Smith*, 702 S.W.2d at 507. Notably, Wife's appeal, on its face, is confined to the non-disclosure terms of the Amended Judgment and does not address the award made to her by the Amended Judgment. Wife provides no argument as to how our analysis of this factor supports her opposition to Husband's Motion to Dismiss. Wife's appeal of the non-disclosure terms contained in the Amended Judgment as presented in Wife's brief and Oral Argument in this case does not involve the award made to Wife, and cannot be viewed as an attempt to increase Wife's award. Accordingly, this factor provides no support for Wife's attempt to survive Husband's Motion to Dismiss the appeal.

### Amount Accepted was a Substantial Portion of Judgment

■ Wife's acceptance of a substantial portion of the award made by the Amended Judgment further mitigates against allowing Wife to proceed with her appeal. Wife has accepted benefits of the Amended Judgment totaling in the millions of dollars. Wife argues that "although the figures are large, Wife has only accepted *slightly more than half* of the 'benefit' of the Judgment, which is far from the 'substantial portion' of the Judgment claimed by Husband." (emphasis added). However, Wife's emphasis on the substantial amount still owed does not outweigh her acceptance of several million dollars in cash and property, which we find to be a very substantial amount of the total due. We are challenged to characterize the mo-

nies and property accepted by Wife to represent only "a small portion of the total judgment" as discussed in *Hicks*, 859 S.W.2d at 845. While case law supports the proposition that a party accepting a fraction of the total amount due may not have waived her right to appeal, *see Smith*, 702 S.W.2d at 505, what constitutes a "fraction" of the total amount due is relative, and we must consider the amount of the total award in this case. We find that in this case, Wife has accepted a substantial and large proportion of the Amended Judgment, which is one factor that disfavors allowing Wife to maintain this appeal.

### Wife's Acceptance Was Not Due to Financial Distress

Husband asserts that Wife's acceptance of the benefits of the Amended Judgment was not due to financial distress because Wife possessed separate funds totaling $621,687 and resided in a house with no mortgage at the time of the entry of the judgment. Wife argues that she was forced to liquidate approximately $180,000 of her separate funds to meet her day-to-day living expenses during the pendency of the parties' dissolution action. Wife further argues that her separate assets and expenses "must be viewed in the context of the entire estate and the parties' prior lifestyle." However, Wife provides no support for her arguments. The fact that the total marital estate was approximately $50,000,000, without more, does not demonstrate Wife's financial need for her immediate acceptance of the marital property. *See Hicks*, 859 S.W.2d at 845 ("the fact that [the appellant] was able to purchase the property in question is not indicative of financial distress on her part.").

We do not find from the record that Wife's acceptance of the benefits of the Amended Judgment was due to any financial distress.

### Husband was Prejudiced

Wife argues that Husband failed to establish any significant prejudice from his payment of the funds or the transfer of title to the real estate. Wife claims that she was already in possession of one of the residences and its personal property therein, and Husband's need to find housing other than the second residence "cannot possibly assert any financial strain given the amount of the assets retained by him." We disagree. We find that Husband has been prejudiced in that he has relinquished two residences, as well as the majority of their contents, and has been forced to find a new home for himself and two of the parties' children. At the very least, such changes represent a substantial alteration in one's life situation, and further require the additional expenditure of time and money. While the inconvenience and additional expense to Husband may not amount to a severe or crippling loss, the prejudice to Husband as a result of transferring substantial property, including his home, to Wife, is not inconsequential.

### Conclusion

Although we have found only a few dissolution cases wherein an appeal has been dismissed because the appealing party accepted benefits from the order or judgment from which the party appealed, the unique facts and procedural posture of this case cry for this case to be added to that short list. To hold otherwise would allow Wife to take the inconsistent positions of enjoying the substantial fruits of the Amended Judgment while appealing that same judgment. "[T]his court perceives no showing of other circumstances that have been held exceptions to the rule that one accepting benefits of a judgment in a dissolution of marriage case is estopped from appealing the judgment." *George v.*

*George,* 991 S.W.2d 679, 681 (Mo.App. S.D. 1999). Simply stated, Wife has accepted a substantial portion of the Amended Judgment she now attacks. Wife will not be permitted to accept what she likes, and then appeal the portion of the Amended Judgment precluding the disclosure of confidential financial information so that she may simply "have her day in court."

This appeal is dismissed.

GLENN A. NORTON and PATRICIA L. COHEN, JJ., Concur.